## UNITED STATES *v.* VAN LEEUWEN

No. 403.   Argued February 25, 1970—Decided March 23, 1970

*Solicitor General Griswold* argued the cause for the United States.  With him on the brief were *Assistant Attorney General Wilson, Joseph J. Connolly, Beatrice Rosenberg,* and *Sidney M. Glazer.*

*Craig G. Davis,* by appointment of the Court, 396 U. S. 952, argued the cause and filed a brief for respondent.

Mr. Justice Douglas delivered the opinion of the Court.

Respondent, at about 1:30 p. m. on Thursday, March 28, 1968, mailed two 12-pound packages at the post office in Mt. Vernon, Washington, a town some 60 miles from the Canadian border.  One package was addressed to a post office box in Van Nuys, California, and the other to a post office box in Nashville, Tennessee.  Respondent declared they contained coins.  Each pack-

age was to be sent airmail registered and each was insured for $10,000, a type of mailing that the parties agree was first class, making them not subject to discretionary inspection.[1]

When the postal clerk told a policeman who happened to be present that he was suspicious of the packages, the policeman at once noticed that the return address on the packages was a vacant housing area of a nearby junior college, and that the license plates of respondent's car were British Columbia. The policeman called the Canadian police, who called customs in Seattle. At 3 o'clock that afternoon customs called Van Nuys and learned that the addressee of one package was under investigation in Van Nuys for trafficking in illegal coins. Due to the time differential, Seattle customs was unable to reach Nashville until the following morning, March 29, when Seattle was advised that the second addressee was also being investigated for the same crime. A customs official in Seattle thereupon filed an affidavit for a search warrant for both packages with a United States commissioner, who issued the search warrant at 4 p. m., and it was executed in Mt. Vernon at 6:30 p. m., 2½ hours later. Thereupon the packages were opened, inspected, resealed, and promptly sent on their way.

Other evidence showed that respondent had brought the two packages in from Canada without declaring them. He was tried for illegally importing gold coins in violation of 18 U. S. C. § 545 and found guilty and sentenced and fined. On appeal, the Court of Appeals reversed, holding that the coins were improperly admitted in evidence because a timely warrant had not been obtained. 414 F. 2d 758. The case is here on a petition for a writ of certiorari, 396 U. S. 885. We reverse.

---

[1] 39 CFR § 131.2 describes "first class" mail as "matter closed against postal inspection," which follows the definition in 39 U. S. C. § 4251 (a).

It has long been held that first-class mail such as letters and sealed packages subject to letter postage—as distinguished from newspapers, magazines, pamphlets, and other printed matter—is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment. As stated in *Ex parte Jackson*, 96 U. S. 727, 733, decided in 1878:

> "Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the fourth amendment of the Constitution."

The course of events since 1878 has underlined the relevance and importance of the Post Office to our constitutional rights. Mr. Justice Holmes in *Milwaukee Pub. Co.* v. *Burleson*, 255 U. S. 407, 437 (dissenting opinion), said that "the use of the mails is almost as much a part of free speech as the right to use our tongues." We have emphasized over and over again that while Congress may classify the mail and fix the charges

for its carriage, it may not set up regimes of censorship over it, *Hannegan* v. *Esquire, Inc.*, 327 U. S. 146, or encumber its flow by setting "administrative officials astride the flow of mail to inspect it, appraise it, write the addressee about it, and await a response before dispatching the mail" to him.[2] *Lamont* v. *Postmaster General*, 381 U. S. 301, 306. Yet even first-class mail is not beyond the reach of all inspection; and the sole question here is whether the conditions for its detention and inspection had been satisfied. We think they had been.

The nature and weight of the packages, the fictitious return address, and the British Columbia license plates of respondent who made the mailings in this border town certainly justified detention, without a warrant, while an investigation was made. The "protective search for weapons" of a suspect which the Court approved in *Terry* v. *Ohio*, 392 U. S. 1, 20–27, even when probable cause for an arrest did not exist, went further than we need go here. The only thing done here on the basis of suspicion was detention of the packages. There was at that point no possible invasion of the right "to be secure" in the "persons, houses, papers, and effects" protected by the Fourth Amendment against "unreasonable searches and seizures." Theoretically—and it is theory only that respondent has on his side—detention of mail could at some point become an unreasonable seizure of "papers" or "effects" within the meaning of the Fourth Amendment. Detention for 1½ hours—from 1:30 p. m. to 3 p. m.—for an investigation certainly was not excessive; and at the end of that time probable cause existed for believing that the California package was part of an illicit project. A warrant could have been obtained that

---

[2] The question as to the right of the addressee to stop deliveries is a separate and distinct one. See No. 399, *Rowan* v. *Post Office*, *post*, p. 728.

day for the one package; yet the mystery of the other package remained unsolved and federal officials in Tennessee could not be reached because of the time differential. The next morning they were reached and it was learned that the second package was also probably part of an illicit project. By 4 p. m.—or 26½ hours after the mailing in Mt. Vernon—a search warrant was obtained in Seattle and at 6:30 p. m., or 29 hours after the mailing, the search warrant reached Mt. Vernon, a speedy transmission considering the rush-hour time of day and the congested highway.

No interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited. The significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained.

The rule of our decisions certainly is not that first-class mail can be detained 29 hours after mailing in order to obtain the search warrant needed for its inspection. We only hold that on the facts of this case—the nature of the mailings, their suspicious character, the fact that there were two packages going to separate destinations, the unavoidable delay in contacting the more distant of the two destinations, the distance between Mt. Vernon and Seattle—a 29-hour delay between the mailings and the service of the warrant cannot be said to be "unreasonable" within the meaning of the Fourth Amendment. Detention for this limited time was, indeed, the prudent act rather than letting the packages enter the mails and then, in case the initial suspicions were confirmed, trying to locate them en route and enlisting the help of distant federal officials in serving the warrant.

*Reversed.*