**UNITED STATES of America**

v.

**Michael Francis LaFRANCE and Mark Anthony Grimmel.**

**Crim. Nos. 87–00081–P–01, 87–00081–P–02.**

United States District Court, D. Maine.

Dec. 9, 1988.

Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., for U.S.

Richard S. Emerson, Jr., Portland, Me., for LaFrance.

Nathan Diamond, Miami, Fla., for Grimmel.

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO SUPPRESS

GENE CARTER, District Judge.

I.

Defendants are charged in a two-count indictment with conspiracy to possess with intent to distribute cocaine in violation of United States Code, sections 841(a)(1), 841(b)(1)(B), and 846, and with aiding and abetting the possession with intent to distribute cocaine in violation of Title 21 United States Code, sections 841(a)(1) and 841(b)(1)(B), and Title 18 United States Code, section 2. Currently before the Court is Defendants' motion to suppress certain evidence, submitted on a stipulated record supplemented by oral argument of counsel and an evidentiary hearing requested by the Court. Also before the Court is the affidavit of Kenneth G. MacMaster, Special Agent of the Maine State Police, in support of the application for a warrant to search a package sent to Frank LaFrance of Holland Street, Lewiston by M. Grimmel of Florida, via Federal Express.[1]

The record reflects that in October and November of 1985 the Lewiston Police Department received anonymous telephone calls stating that a Michael LaFrance of Lewiston was selling cocaine and marijuana that he received in shipments from a Mark Grimmel in Florida via Federal Express. No investigation was conducted until late March when Patrolman Avery of the Lewiston Police determined that a Michael LaFrance lived at Shawmut Street in Lewiston and had been receiving a package a week from Florida via Federal Express since November 1985. LaFrance had sent return packages to Florida in the same manner. In March or April 1986 the police had been told by Michael LaFrance's girl-friend that he had been out of the cocaine business since December 1985.

Sometime before 9:00 a.m. on June 5, 1986, Federal Express informed the Lewiston Police Department that a package originating from M. Grimmel had arrived for a Frank LaFrance of 211 Holland Street, Lewiston. As noted above, Michael LaFrance lived on Shawmut Street and police investigation had not shown previous packages sent by Grimmel of Florida to Frank LaFrance. However, according to the affidavit of Officer MacMaster, the anonymous caller had told police that sometimes LaFrance kept his cocaine at his father's house at 211 Holland Street, Lewiston and that the father knew of the son's drug dealings.

At about 9:00 a.m. on June 5, Lieutenant Saucier and Officer Avery of the Lewiston Police Department conferred and decided to seek advice from MacMaster and in the meantime to ask Federal Express to put a hold on the package. Tr. 28. Lieutenant Saucier called Special Agent MacMaster, and the two decided to find a drug-trained dog to review it. Tr. 5. By 9:20 a.m. Special Agent MacMaster located Trooper Paul Gallagher, handler of Solomon, a drug-sniffing dog, in Gray, Maine, and determined that Gallagher and Solomon were available for a sniff test. Tr. 11. Gray is a town about halfway between Portland and Lewiston. Tr. 12.

MacMaster decided to have the drug sniff take place in Lewiston because Lewiston was the package's ultimate destination and was an easier and closer place for the officers to get together to review the package. Tr. 6, 16. Officer Avery of the Lewiston Police, therefore, instructed John Attanas of Federal Express to send the package to Lewiston in the normal course and to deliver it to the police department after all of Federal Express's Lewiston delivery commitments were met. Tr. 55. The Federal Express a.m. commitment in Lewiston is for delivery by noon, Tr. 57, and the

---

**1.** Both parties have submitted MacMaster's affidavit with their memoranda, Defendants stating that "[s]aid affidavit outlines the details of the events that led up to the seizure of said package." The Court, therefore, is satisfied that it may use the affidavit to augment the record where necessary.

officers understood that the packages would arrive at the police department between then, Tr. 14, and 1:00 p.m. Tr. 32. Officer Avery called Trooper Gallagher and told him to be at the Lewiston Police Department at 1:00 p.m. Officer Avery, who had been at home caring for his child, arrived at the police station at 12:45 p.m. and Gallagher arrived at 1:00 p.m. After appropriate arrangements had been made for a package array, the sniff test began at approximately 1:15 p.m. By 2:15 p.m. the test was completed, Tr. 34, and Solomon had alerted on the package, indicating that he smelled drugs in it. Tr. 45–46. Thus, probable cause to search the package was established at 2:15 p.m. *United States v. Race,* 529 F.2d 12 (1st Cir.1976).

Defendant LaFrance testified that, based on prior experience, Tr. 69, he had expected the package to be delivered between 11:00 and 11:15 a.m. Tr. 64. When it had not arrived by 11:00 a.m., he called Defendant Grimmel in Florida, who then called Federal Express seeking to trace the package. Grimmel called LaFrance back and told him to call Federal Express as well. Tr. 65. Beginning at 11:15 or 11:30 a.m., Defendant LaFrance called Federal Express almost every half hour until between 5:00 and 6:00 p.m. Tr. 68. Around 1:00 or 1:30 p.m., he was told that Federal Express did not know where the package was, that they were looking for it, and that there had been an attempt made to deliver it. During the afternoon no one told LaFrance where the package was. After 5:00 p.m., someone from Federal Express called LaFrance, told him the package was in Augusta, and asked him to meet the truck on the turnpike. Tr. 69. Defendant LaFrance arrived at the appointed place to pick up the package and was arrested after he took possession of a dummy package containing no contraband.

## II.

Defendants argue that the seizure and detention of the package without a warrant was without reasonable suspicion or probable cause to believe that a crime was being

committed and that the detention of the package for over five hours to allow Solomon to sniff it was unreasonable and in violation of Defendants' constitutional rights.

■ In examining the reasonableness of the seizure and detention of the package, the Court begins with the long-established premise that detention of a package in the mails on reasonable suspicion is justified when the detention infringes no significant Fourth Amendment interest. *United States v. Van Leeuwen,* 397 U.S. 249, 252–53, 90 S.Ct. 1029, 1032–33, 25 L.Ed.2d 282 (1970); *United States v. Jacobson,* 466 U.S. 109, 125, n. 28, 104 S.Ct. 1652, 1663 n. 28, 80 L.Ed.2d 85 (1984). The Court in *Van Leeuwen* had referred to *Terry v. Ohio,* 392 U.S. 1, 20–27, 88 S.Ct. 1868, 1879–83, 20 L.Ed.2d 889 (1968), the seminal stop and frisk case, and the Court of Appeals for the First Circuit has explained:

> The lesson we glean from *Van Leeuwen* is not that the principles in *Terry* are irrelevant to the detention of a person's effects as opposed to the stop of his person, but that the lesser fourth amendment interest involved in the former situation will justify a somewhat more lengthy detention under the *Terry* rationale than in the latter case.

*United States v. Regan,* 687 F.2d 531, 538 (1st Cir.1982).

The Supreme Court further elaborated the analytic path for determining the permissibility of detentions of personal effects in *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). The Court stated that

> [g]iven the fact that seizures of property can vary in intrusiveness, some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime.

*Id.* at 706, 103 S.Ct. at 2644.[2] The Court in this case must, therefore, determine if

---

**2.** In *United States v. Place,* 462 U.S. 696, 705 n.   6, 103 S.Ct. 2637, 2643 n. 6, 77 L.Ed.2d 110

there was an articulable or reasonable suspicion that the package seized contained contraband and, if some detention is permissible on that basis, balance the extent of the intrusion on Defendant's Fourth Amendment interests against the substantial governmental interests involved in detecting drug traffickers. *Id.* at 703, 103 S.Ct. at 2642.

It is plain, and the Government has conceded, that it did not have probable cause to seize and search the package from Federal Express. The Court finds, however, that on the record before it there was a basis for reasonable suspicion that the package to Frank LaFrance of Holland Street contained contraband.

The police had admittedly stale information from an anonymous informant. That informant indicated that Defendant LaFrance was in the cocaine business and received shipments of the drug from Mark Grimmel in Florida. Investigation of the tip in March and April verified and updated the initial information. *See United States v. Moscatiello*, 771 F.2d 589, 597 (1st Cir. 1985) (in which the court permitted the use of year-old informant information supplemented by surveillance evidence to establish probable cause) (vacated twice on other grounds *sub nom. Murray v. United States*, 476 U.S. 1138, 106 S.Ct. 2241, 90 L.Ed.2d 688 (1986), and — U.S. —, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)). The new information received from Federal Express in late March indicated that Defendant LaFrance had indeed been receiving packages regularly from Mark Grimmel in Florida. The information received from Defendant's girlfriend confirmed that he had been a cocaine dealer. The girlfriend's representation that LaFrance had stopped dealing in drugs was belied by the fact of his regular receipt of packages from Florida, a common method of cocaine distribution known to law enforcement personnel involved in drug investigations. *See Mac-Master Affidavit and Request for Search Warrant*, ¶ 15. Although the relationship

of LaFrance to the Holland Street address was not confirmed, that aspect was not likely to have become stale.

■ The police, therefore, knew when the package arrived for Frank LaFrance on Holland Street that an alleged drug dealer with the same last name had been receiving similar packages, reputedly of cocaine, from the same source, and that he had stored his cocaine at the address given for Frank LaFrance on this package. These facts were enough to raise a reasonable suspicion in the police that the package might contain contraband, enough at least to warrant a short detention for further investigation. As the Supreme Court stated in *Place:*

> In sum, we conclude that when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope.

*United States v. Place*, 462 U.S. at 706, 103 S.Ct. at 2644. In *Place*, the Court held a ninety-minute detention of a traveler's luggage unreasonable under the circumstances.

■ The facts of this case are not identical to those described in *Place* and the other luggage detention cases. They are highly analogous, however, since Defendants sent and expected to receive a package via Federal Express, a service which guarantees delivery by a certain time. Their demonstrated strong interest in timely possession of the package makes them similar to travelers who expect their luggage to be available to them at a given time. The Court agrees with the Government and Defendants, therefore, that the test for the propriety of the detention must be its reasonableness under the particular circumstances. *United States v. West*, 731

(1983), the Court quoted 3 W. LaFave, *Search and Seizure* § 9.6, p. 71 (Supp.1982), which noted "Van Leeuwen was an easy case for the Court because the defendant was unable to show that

the invasion intruded upon either a privacy interest in the contents of the package or a possessory interest in the packages themselves."

F.2d 90, 92 (1st Cir.1984); *United States v. Borys,* 766 F.2d 304, 312–13 (7th Cir.1985); *United States v. Alpert,* 816 F.2d 958, 964 (4th Cir.1987). Among the factors to be considered in determining reasonableness are (1) the brevity of the detention; (2) the diligence of the officers in pursuing their investigation so as to minimize the intrusion; and (3) the information provided to the suspect regarding the detention and return of the package. *United States v. West,* 731 F.2d at 92.

The detention of Defendants' packages which must be evaluated in this case lasted from 9:03 a.m., when Officer Avery first instructed Mr. Attanas of Federal Express concerning the package, until 2:15 p.m., when Solomon had completed his test and alerted, providing probable cause to search —a total of five hours and twelve minutes. During that time, the police were controlling the package's movements, and it is clear that they could have made whatever arrangement for it that they wanted. Tr. 37, 53.

### III.

Having heard the officers' testimony about planning for and executing the sniff test, the Court is not satisfied that they acted diligently in pursuing the investigation so as to minimize the intrusion. The officers chose a mode of investigation that was convenient for them, with apparently no consideration for minimizing or avoiding the intrusion on Defendants' possessory interests. In fact, Special Agent MacMaster chose a course of action that was *certain* to produce a delay in delivery since it involved having the package dropped off at the police station for the sniff test *after* all the other packages in Lewiston had been delivered. MacMaster and Saucier might have chosen to have the package held in Portland for the test to be conducted there, which would have minimized the intrusion. Trooper Gallagher was available and could have been in Portland, which is approximately the same distance from Gray as Lewiston, by 10:00 a.m. Tr. 13, 47. Presumably, MacMaster and Saucier also might have chosen to have the package removed from the Federal Express shipment and sent by special courier to Lewiston, where it could have been examined by Solomon sooner. As a final possibility, the officers might have requested that Federal Express drop the package off at the police station before completing its other deliveries in Lewiston. Even this would have saved some time.

The officers had many alternatives by which to reduce the intrusiveness of their chosen plan and no compelling reason has been offered for the choice which they made. MacMaster testified that having Federal Express bring the package to Lewiston "was suitable for our needs," Tr. 23, but it seems clear that Solomon's test, which was performed only by Solomon at Trooper Gallagher's direction, could have been conducted anywhere. The Court notes too that the exact time of arrival of the package in Lewiston was not known. Officer Avery, who was in telephone contact with Trooper Gallagher, might have arranged to have him waiting and the test environment set up when the package arrived at 12:45 p.m., thus preventing thirty minutes extra delay. Instead, Gallagher was told to arrive at 1:00 p.m., probably the outside limit for expected time of arrival, *see* Tr. 16, 31, 32, and test preparations were made after his arrival. Again, there seemed to be a marked lack of concern for the fact that a citizen's belongings were being kept from his possession, perhaps unnecessarily.

The officers apparently made no effort to provide any information to Defendants concerning the detention of their package. The officers knew that the package would not be delivered according to schedule and should have inferred from the fact that it had been sent via Federal Express that Defendant LaFrance would be awaiting it. Yet they did not telephone him to tell him the nature and cause of the delay. Moreover, since Federal Express was committed to do whatever the police asked, Tr. 53, the police apparently did not give instructions to Federal Express to answer the likely inquiries concerning the package, or they gave instructions to dissemble. Each of the numerous times that Defendants tele-

phoned to ask of the package's fate, they were put off and, in fact, deceived by being told that Federal Express did not know where the package was and that an attempt had been made at delivery. The fact that the defendant in *Place* had been misinformed as to the detention of his package was an aggravating factor in the Supreme Court's determination that a ninety-minute detention was unreasonable. *United States v. Place*, 462 U.S. at 710, 103 S.Ct. at 2646.

Defendants' package was detained by the police for more than two hours after Federal Express's delivery commitment, for about three hours after Defendant had expected delivery based on his prior experiences, and for over five hours from when the police assumed control of it.[3] Rather than diligently pursuing the investigation so that the intrusion would be minimized, the police set what the Defendants have correctly called a leisurely pace, suiting their own needs, and causing what was at least a two-hour, and possibly a three-hour, intrusion on Defendants' possessory interests. Although the police were properly solicitous of Defendants' rights to be protected from warrantless searches, they were unduly neglectful of Defendants' other important Fourth Amendment right to be free from unreasonable seizures of their property. This neglect is emphasized by the failure of the police officers to provide Defendants with accurate information about the package once it had been detained.

In *Place*, a ninety-minute detention with some of the aggravating features found here was held unreasonable. *United States v. Place*, 462 U.S. at 709–10, 103 S.Ct. at 2645–46. In *Borys*, cited by the Government, the court stated that a seventy-five-minute detention "if permissible at all, is at the outer bounds of the Constitution." The detention there was found reasonable since the police had acted diligently and no aggravating circumstances were present. *United States v. Borys*, 766 F.2d at 313. The detention here, whether of two-and-one-quarter or five hours, was unreasonable under all the circumstances and thus constitutes a violation of Defendants' constitutional rights.

### IV.

Accordingly, it is ORDERED that Defendants' Motion to Suppress is hereby GRANTED, and the evidence obtained as a result of the detention is hereby SUPPRESSED.

---

3. None of the delay was attributable to the Defendants. *See United States v. Alpert*, 816 F.2d at 964.