898 F.2d 635
 29 Fed. R. Evid. Serv. 1349
 UNITED STATES of America, Appellee,
v.
William Charles LONGBEHN, a/k/a William Charles Sisson, Otto
William, William Otto, and Peg Leg, Appellant.
UNITED STATES of America, Appellee,
v.
Elizabeth LUNDSTROM, Appellant.
UNITED STATES of America, Appellee,
v.
Angela SISSON, Appellant.
 Nos. 89-5035 to 89-5037.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 15, 1989.
Decided March 14, 1990.
 
 1
 Barry Voss, Paul Engh, and John R. Wilde, Jr., Minneapolis, for appellants.
 
 
 2
 Paul A. Murphy, Minneapolis, for appellee.
 
 
 3
 Before LAY, Chief Judge, ARNOLD, Circuit Judge, and LARSON,* Senior District Judge.
 
 
 4
 LARSON, Senior District Judge.
 
 
 5
 Defendants William Longbehn, Elizabeth Lundstrom, and Angela Sisson[1] appeal from the judgment and sentence of the district court.[2] Finding no error which justifies reversal, we affirm.
 
 I.
 
 6
 Longbehn, Lundstrom, and Sisson were indicted with several other individuals in a nineteen count indictment charging conspiracy to distribute methamphetamine (count 1), distribution of methamphetamine by defendant Longbehn on eleven separate occasions (counts 2 through 13),[3] interstate travel by defendants Longbehn, Lundstrom, and Sisson to promote the distribution of methamphetamine (counts 14 through 17), and use of a facility in interstate commerce by defendants Longbehn and Lundstrom to promote the distribution of methamphetamine (count 19).[4]
 
 
 7
 At trial, the government presented testimony from numerous witnesses, including two individuals who distributed methamphetamine for Longbehn from 1984 through 1986, at a profit for each of them of approximately $100,000. One of the individuals, Joseph Colucci, met Longbehn in 1982, while putting a roof on Longbehn's property. Longbehn gave Colucci user quantities of methamphetamine from that time until 1984. From 1984 to 1986, Colucci would buy a quarter pound of methamphetamine twice a month from Longbehn, which Colucci would then sell in smaller quantities.
 
 
 8
 Colucci testified he accompanied Longbehn on two trips to California, Longbehn's source for methamphetamine. Both Sisson and Lundstrom also traveled to California in connection with the first trip in October, 1984, and Colucci testified he saw Lundstrom and Longbehn together "breaking up" methamphetamine in a hotel room. Bobby Bryant, one of the other individuals who distributed methamphetamine for Longbehn, testified he first met Longbehn in a St. Paul bar shortly after the 1984 California trip. Bryant asked Longbehn if he could buy some methamphetamine, which Longbehn agreed to supply several days later. Thereafter, Bryant became a regular purchaser of increasing quantities of the drug--up to a pound per month from the summer of 1985 through 1986.[5]
 
 
 9
 Rick Molenhouse, a co-conspirator who pled guilty prior to trial, testified he supplied Longbehn with methamphetamine beginning in 1985. Molenhouse met Longbehn and Sisson in Nevada in the winter of 1985 with a sample of methamphetamine, which Longbehn had requested Molenhouse bring from California. After Longbehn and Sisson used the sample, they told Molenhouse to get them a pound for $12,000. Molenhouse and his wife made other trips to Minnesota with methamphetamine for Longbehn. Molenhouse would arrive with the drugs and then wait for additional funds to go back to California to buy more methamphetamine.
 
 
 10
 In February, 1986, Molenhouse was arrested at the San Diego airport after he left Longbehn's residence in St. Paul.[6] Agents confiscated $35,000 in cash, which Molenhouse had obtained from Longbehn, as well as a small amount of marijuana. After obtaining a lawyer in California, Molenhouse flew back to Minnesota and met with Longbehn and Sisson to discuss the situation. In April, 1986, Sisson herself flew to California to meet with attorneys regarding Molenhouse's arrest.
 
 
 11
 Upon the advice of an attorney consulted by Sisson, Molenhouse's counsel declined to seek recovery of the $35,000, which resulted in prosecutors declining to press charges against Molenhouse for the marijuana possession. Several months later, Sisson moved from St. Paul to Tennessee. While in Tennessee, Sisson wrote a letter to an unindicted co-conspirator named "Cracko," which detailed Sisson's meetings with the lawyers and her concerns about police detection of drug activity. This letter was found at Longbehn's St. Paul residence.
 
 
 12
 After Sisson moved out of Longbehn's St. Paul residence, Lundstrom moved in. In September, 1986, she helped arrange Colucci's second California trip with Longbehn, making Colucci's plane reservation, driving him to the airport, and giving him money and instructions on meeting Longbehn. In California, Longbehn and Colucci met with co-defendant Michael Wheeler at Wheeler's motorcycle shop. Upon their arrival back in Minnesota, Colucci obtained a quarter pound of methamphetamine from Longbehn and Lundstrom delivered a basket with a pound of methamphetamine to Bobby Bryant.
 
 
 13
 On September 8, Lundstrom left Longbehn's St. Paul residence with a package containing $10,000 addressed to Michael Wheeler. She left it at the Post Office at 11:30 a.m. for express mail delivery to Wheeler. Agents, who were conducting surveillance of Longbehn's residence, asked that postal officials keep the package until they could obtain a dog to sniff it. The dog arrived at 1:00 p.m. and picked the package out of approximately 200 other pieces of mail. Agents then applied for a warrant to search the package, which was issued at 4:45 p.m. After agents removed the $10,000 they found inside various "inner envelopes," the package was resealed and delivered to Wheeler the next day.
 
 
 14
 When Wheeler opened the now-empty package, a series of phone calls between Wheeler and Longbehn ensued, which were recorded by agents and which implied the money was for the purchase of drugs. Agents obtained a search warrant for Longbehn's St. Paul residence, which was executed September 10, 1986. Agents found various incriminating items, although they missed the money Colucci had recently paid Longbehn for the methamphetamine obtained in California, a fact Colucci, Lundstrom, and Longbehn discussed when Colucci met with them shortly after the search warrant was executed.
 
 
 15
 Longbehn's other properties in Tennessee and northern Minnesota were searched shortly after his residence in St. Paul. The evidence obtained in these searches, along with the testimony presented in the ten days of trial, suggested that Longbehn had been a highly sophisticated, successful dealer. Longbehn himself admitted in a telephone conversation taped in May, 1986, that he'd "been in the business a long [expletive] time." The jury convicted Longbehn of all counts charged in the indictment, and the district court imposed four consecutive 15 year sentences, along with various concurrent sentences.
 
 
 16
 The jury found defendant Lundstrom guilty of three counts:[7] conspiracy (count 1), one count of distribution in connection with her delivery of the basket of methamphetamine to Bobby Bryant (count 13), and one count of use of an interstate facility to promote the distribution of methamphetamine in connection with the mailing of the $10,000 package (count 19). Lundstrom was sentenced to a total of three years.
 
 
 17
 Sisson was found guilty of conspiracy (count 1) and two counts of interstate travel to promote the distribution of methamphetamine: the purchase of methamphetamine from Colucci in Nevada (count 15) and her travel in April, 1986 to California to consult with attorneys regarding Molenhouse's arrest (count 16). Sisson was sentenced to a total of eight years. All three defendants have appealed.
 
 II.
 
 18
 Defendant Longbehn argues on appeal that the trial court erred in admitting evidence of other crimes, he challenges the court's instructions regarding the "other crimes" evidence and the Travel Act violations, he submits the search warrants obtained by agents were improperly issued, and he argues his sentence violates the eighth amendment.
 
 
 19
 In addition to testimony concerning Longbehn's distribution of methamphetamine to Bryant, Colucci, and others from 1984 through 1986 as alleged in the indictment, the trial court admitted testimony from Longbehn's nephew that Longbehn distributed methamphetamine to him in 1978. The court also admitted testimony from Colucci that Longbehn provided Colucci with user quantities of drugs in 1982. Finally, the court allowed the government to introduce evidence that in 1986 Longbehn distributed percodan to a government informant, James Wood, during a tape-recorded conversation with Wood in which Wood and Longbehn discussed setting up a meeting with an individual who wanted to trade diamonds to Longbehn for drugs.
 
 
 20
 The requirements for admission of evidence of "other crimes" pursuant to Fed.R.Evid.P. 404(b) are well established: (1) the evidence of the other crimes must be relevant to a material issue, (2) the evidence must be similar in kind and reasonably close in time to the crime charged, (3) the other crimes must be proved by a preponderance of the evidence, and (4) the probative value of the evidence must outweigh its prejudicial effect. United States v. Anderson, 879 F.2d 369, 378 (8th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989); United States v. Johnson, 879 F.2d 331, 334 (8th Cir.1989); United States v. Mothershed, 859 F.2d 585, 588-89 (8th Cir.1988). A trial court has broad discretion to admit other crimes evidence, and its decision will be overturned only when the record shows that the evidence clearly had no bearing on the issues at trial. See Johnson, 879 F.2d at 334; United States v. Maichle, 861 F.2d 178, 180 (8th Cir.1988).
 
 
 21
 Longbehn argued in his brief and in the oral argument before this Court that the 1978 and 1982 incidents were irrelevant because they fell outside the time frame of the conspiracy alleged in the indictment (1984 through 1986). Longbehn further maintained that the 1986 percodan incident was not relevant to the conspiracy charged, i.e., the distribution of methamphetamine. The government maintains the incidents were all relevant to establishing Longbehn's intent, which the government maintains was at issue in the case. See United States v. Jardan, 552 F.2d 216, 219 (8th Cir.), cert. denied, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977).
 
 
 22
 In United States v. Maichle, 861 F.2d 178 (8th Cir.1988), this Court affirmed the admission of testimony concerning other, prior drug transactions where the activities were similar in kind and reasonably close in time to those alleged in the indictment. Id. at 180-81. We note in this case Colucci's testimony regarding Longbehn's 1982 distribution was given in the context of Colucci's description of how he met and eventually became a distributor for Longbehn. The taped conversations between Longbehn and Wood about the percodan transaction occurred in 1986, during the time period alleged in the indictment, and related to setting up a trade of diamonds for drugs. The testimony of Longbehn's nephew showing Longbehn had used his nephew to distribute methamphetamine in 1978 was more remote in time, although similar in character to the crimes charged.
 
 
 23
 Assuming the court erred in admitting any of this "other crimes" evidence, we are unpersuaded by Longbehn's argument that the error was so prejudicial a new trial is required. See Johnson, 879 F.2d at 334-35; United States v. Kandiel, 865 F.2d 967, 973 (8th Cir.1989). The government established through numerous witnesses, including distributors Bobby Bryant and Joseph Colucci, that Longbehn was the source of their methamphetamine and was the individual in charge of an ongoing distribution scheme. Any error in the admission of "other crimes" evidence was, in this case, harmless.
 
 
 24
 Moreover, Longbehn concedes the court's instructions to the jury contained a limiting instruction concerning the "other crimes" evidence, and in particular referred to evidence concerning Longbehn's involvement with marijuana and the percodan distribution.[8] Longbehn complains, however, that this instruction was, in effect, "too little, too late," because the court should have given a limiting instruction each time evidence was received and should have specifically identified each "other crimes" incident in the instructions given at the end of the case.
 
 
 25
 The district court is, of course, given considerable discretion in choosing the form and language of jury instructions. Anderson, 879 F.2d at 380 (citing United States v. Jerde, 841 F.2d 818, 820 (8th Cir.1988)). The court did not give the precise instruction requested by defendant, but fairly informed the jury that evidence about similar acts could not be considered to prove the defendant committed the acts charged. The court's instruction properly limited use of the "other crimes" testimony to proving defendant acted with the necessary intent. We are unable to find an abuse of discretion under these circumstances. See id; United States v. Blake, 862 F.2d 171, 172 (8th Cir.1988); United States v. Bowman, 798 F.2d 333, 335-37 (8th Cir.1986), cert. denied, 479 U.S. 1043, 107 S.Ct. 906, 93 L.Ed.2d 856 (1987). Defendant's challenge to the court's Travel Act instructions must fail for similar reasons. Read as a whole, the instructions do not constitute plain error, the proper standard of review given defendant's failure to object at the trial. See United States v. Kragness, 830 F.2d 842, 855 (8th Cir.1987).
 
 
 26
 With regard to defendant's other allegations of error, we find the district court properly denied defendant Longbehn's motion to suppress evidence obtained after execution of various search warrants. Defendant argues agents lacked probable cause to search the express mail package to Wheeler and misquoted a recorded telephone conversation between Bryant and Longbehn, which was offered to support the application for a warrant for Longbehn's St. Paul address. As the district court found, the positive results of the narcotics "sniff" test provided probable cause to search the express mail package under the standards appropriate to testing the validity of a search warrant affidavit, see Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332-33, 76 L.Ed.2d 527 (1983), and the misquotation simply could not have misled the magistrate, since the sentence either as spoken or as misquoted would support the inference that methamphetamine was being discussed.[9]
 
 
 27
 We find no basis for ordering a new trial of the charges against defendant Longbehn.
 
 III.
 
 28
 Defendant Lundstrom's arguments on appeal also concern the express mail package she left at the Post Office. Lundstrom claims the court erred in denying her suppression motion because the 90 minute delay between the time the package was first received by postal officials (11:30 a.m.) and the time agents were able to obtain a dog to perform the "sniff" test (1:00 p.m.) constitutes an unreasonable search and seizure. Again, we agree with the district court that a ninety minute delay of a package voluntarily relinquished to postal authorities is not unreasonable. See United States v. Van Leeuwen, 397 U.S. 249, 252-53, 90 S.Ct. 1029, 1032-33, 25 L.Ed.2d 282 (1970).
 
 
 29
 Lundstrom further argues on appeal that the court erred in its instructions with respect to the effect of the guilty plea of co-defendant Rick Molenhouse. At the request of co-defendant Wheeler, the district court gave a modified version of the Eighth Circuit model instruction suggested by Wheeler.[10] Defendant Lundstrom made no objection to the court's version of the instruction, nor did she even join in Wheeler's initial request that the instruction be given. Under these circumstances, while the model instruction might more completely reflect the limited effect a jury may properly give a testifying co-defendant's guilty plea, we find no reversible error in the instruction given. See United States v. Petty, 798 F.2d 1157, 1161 (8th Cir.1986), vacated on other grounds, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987).
 
 IV.
 
 30
 Defendants' remaining challenges to their convictions concern the sufficiency of the evidence. Both defendant Lundstrom and defendant Sisson argue the evidence showed only that they were personally associated with Longbehn and were familiar with drugs. They contend the evidence failed to establish beyond a reasonable doubt their participation in a methamphetamine conspiracy. We review the evidence in the light most favorable to the jury's verdict. See Anderson, 879 F.2d at 376; United States v. Casperson, 773 F.2d 216, 221 (8th Cir.1985).
 
 
 31
 Viewed in this light, there is substantial evidence to support the jury's guilty verdicts. Molenhouse testified he delivered methamphetamine to Longbehn and Sisson while the two were staying in Las Vegas in 1985, and money for a pound of the drug was wired to their hotel there. Sisson actively participated in meetings and traveled to California to attempt to resolve the problems which arose when Molenhouse got arrested. Her letter, found at Longbehn's St. Paul residence, reveals she was not simply "knowledgeable" about drugs, she was actively participating to protect Longbehn's distribution business. The evidence with respect to defendant Lundstrom is also sufficient to support the inference that she knowingly transported drugs for Longbehn and performed other drug-related activities for him. We find no grounds for the reversal of the convictions of defendants Lundstrom and Sisson.
 
 V.
 
 32
 The final issue before us involves defendant Longbehn's sentence. Longbehn claims on appeal that the four 15 year consecutive terms imposed by the district court constitute cruel and unusual punishment.[11] Defendant was sentenced prior to the effective date of the Sentencing Guidelines, and each sentence imposed was within the statutory maximum. Under these circumstances, our review is limited. See, e.g., United States v. Richard (Black Bear), 872 F.2d 253, 255 (8th Cir.1989). The district court identified on the record the reasons for imposing the sentence selected, and our review has not convinced us the sentence is so excessive or disproportionate that it exceeds constitutional limits. See United States v. Mendoza, 876 F.2d 639, 640-41 (8th Cir.1989). See generally United States v. Milburn, 836 F.2d 419, 421 (8th Cir.), cert. denied, 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988).
 
 V.
 
 33
 Finding no error which requires reversal of defendants' convictions or which allows reversal of the sentence imposed on defendant Longbehn, the judgment and sentence of the district court with respect to all three defendants is affirmed.
 
 
 
 *
 The Honorable EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 Co-defendant Michael Wheeler was tried and convicted with Longbehn, Lundstrom, and Sisson. Wheeler's appeal has been considered by a separate panel of this Court. See United States v. Wheeler, No. 88-5516 (8th Cir.)
 
 
 [2]
 The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota
 
 
 [3]
 Lundstrom was also charged with distribution in count 13
 
 
 [4]
 Co-defendant Michael Wheeler was charged in counts 1 and 19 with conspiracy to distribute methamphetamine and use of an interstate facility to promote the distribution of methamphetamine
 
 
 [5]
 Bryant's largest purchase was 3 pounds in the spring of 1986. Bryant was arrested in the fall after he sold methamphetamine to a government informant. Bryant was charged in a separate indictment and pled guilty to one count of conspiracy to distribute methamphetamine. He was sentenced to 15 years and was serving that sentence at the time of trial
 
 
 [6]
 At that time, defendant Sisson lived in Longbehn's house at 1959 North Lexington; Longbehn lived in the garage, which he had improved to the extent that its quarters were described as "semi-luxurious." Longbehn conducted his drug business primarily from the garage
 
 
 [7]
 The jury acquitted defendants Sisson and Lundstrom of one interstate travel count in connection with the first California trip (count 14). The evidence showed the trip occurred in October, 1984, not October, 1985, as alleged in the indictment, and counsel for both defendants argued they were simply along as "girlfriends."
 
 
 [8]
 Longbehn's counsel admitted in his closing argument that Longbehn was a distributor of marijuana
 
 
 [9]
 On September 7, shortly after the second California trip, Longbehn called Bryant to tell him he had some "mail" for Bryant. When Bryant asked "Is it good mail?" Longbehn responded that it was "from crank on the jet-ski." The agent misquoted this latter phrase as "crank from the jet-ski." "Crank" is a common street term for methamphetamine
 
 
 [10]
 Wheeler's request was virtually the same as the current version of instruction 2.19 from the Manual of Model Criminal Jury Instructions (as revised July, 1989):
 You have heard evidence that witness (name) has pleaded guilty to a crime which arose out of the same events for which the defendant is on trial here. You must not consider that guilty plea as any evidence of this defendant's guilt. You may consider that witness's guilty plea only for the purpose of determining how much, if at all, to rely upon that witness's testimony.
 Defendant Wheeler did not challenge on appeal the modified version of his proposed instruction given by the district court. See United States v. Wheeler, No. 88-5516 (8th Cir.).
 
 
 [11]
 Defendant was sentenced to a total term of 60 years as follows:
 Count 1 (conspiracy): 15 years
 Counts 2-3 (distribution): 5 years, special parole term of 2 years, concurrent with Count 1
 Counts 4-7 (distribution counts): 15 years, special parole term of 3 years, concurrent with each other and consecutive to Counts 1-3
 Counts 8-10 (distribution counts): 15 years, special parole term of 3 years, concurrent with each other and consecutive to Counts 4-7
 Counts 11-13 (distribution counts): 15 years, special parole term of 3 years, concurrent with each other and consecutive to Counts 8-10
 Counts 14, 15, 17, and 19 (interstate travel and use of the mails): 5 years, concurrent with each other and with Counts 11-13.
 Pursuant to 18 U.S.C. Sec. 4205(b)(1), the court designated 20 years as the minimum term at which the defendant will be eligible for parole.