## CIRCUIT COURT OF CULPEPER COUNTY

Commonwealth of Virginia

v.

James Simpson

Case Nos. CR92–323, CR92–324, and CR92–325

Commonwealth of Virginia

v.

Joshua Butler

Case Nos. CR92–318, CR92–319, and CR92–320

April 1, 1993

BY JUDGE LLOYD C. SULLENBERGER

The court's ruling on Joshua Butler's and James Simpson's motions to suppress, heard March 30 and 31, 1993, follows in summary form because of the closeness of trial.

Butler and Simpson are co-defendants each charged on June 3, 1992, with possessing with intent to distribute psilocybin and marijuana and with conspiring with the other to possess with intent to distribute psilocybin and marijuana.

Each claims actions of the Commonwealth's agents violate his Fourth Amendment rights. Simpson also asserted a Fifth Amendment claim concerning interrogation on June 3, 1992, which he did not argue orally. In any event, his motion to suppress his statements on that ground is denied.

The evidence shows, among other things, that on Saturday, May 23, 1992, Postmistress Robson of Jeffersonton received from California a

"priority mail" package addressed to James Butler, HCR 01, Box 29, Jeffersonton, which address was that of James Simpson.

Suspicious because of prior mailing to that address, she called Culpeper Sheriff's Investigator Holt, who came that morning to the post office with a drug detection dog and handler from Orange County. The dog, Argus, sniffed five packages, alerting to the package in question. Argus was trained to detect marijuana, hashish, cocaine (including "crack"), heroin, and methamphetamine, but not psilocybin. The package was not opened.

Postmistress Robson then called a postal inspector in Richmond who directed her to mail the package to Postal Inspector Green in Richmond, which she did on May 23.

Green received the package on Tuesday, May 26, 1992, May 25 having been a legal holiday. On that day, Green had the package, among others, presented to a drug detection dog from Henrico County handled by Officer Shaw. The dog, Ben, likewise alerted to the package. Ben was trained to alert to marijuana, hashish, cocaine, heroin, and other drugs similarly manufactured, according to Shaw.

Green then sought and obtained on May 26 a federal search warrant to open the package, which he did. Contained in the package were several plastic bags of dried mushrooms.

After talking with Holt, he and Green decided to attempt a controlled delivery on the package. Green put back in the package 100 grams of mushrooms and put a beeper which emitted a slow beep until the wires attached to it were disturbed by opening the package. The beeper then emitted a rapid beep.

On May 27, 1992, Postmistress Robson, at Green's direction, caused a package notice to James Butler to be delivered to the HCR 01, Box 29, address.

On May 28, 1992, Green, Holt, and other officers staked out the post office, hoping that someone would pick up the package in response to the notice, but no one did so. Green took the package back to Richmond.

On the following day, defendant, Joshua Butler, attempted to pick up the package in response to the notice but was told that the package was not at the post office. Robson told Butler she would try to retrieve it. Butler was not known to Robson, but he showed her identification. She did not recall the first name thereon. Butler left a telephone number at Robson's request for her to use to call him when she had the package.

Green and Holt arranged to set up a delivery on June 3, so Robson was directed to call on June 2 the telephone number given her by Butler. She did so, advising a female who answered that the package could be picked up on June 3.

On June 3, Green, Holt, and other officers staked out the post office. Defendant James Simpson came for the package and was given it by Robson. He took it to work with him, then later home where the beeper began emitting the rapid tone.

The officers went to the house with Holt and Green going to the open front door. Holt saw Simpson with the package in one hand and a kitchen knife in the other. At Holt's direction, Simpson dropped both.

Holt, Green, Simpson, and a female in the house, Snoke, went into the yard where Simpson was advised of his so-called *Miranda* rights, waived them, and made certain oral statements.

The Commonwealth argues that because the package was addressed to James Butler, at the Simpson's address, neither defendant has standing to object to the diversion and opening of the package or the placing of the beeper therein because neither had a legitimate expectation of privacy in the contents of the package, since neither was the named addressee.

The evidence shows that the postmistress would have delivered the package, had she had it at the time, to defendant Butler upon his inquiry following the notice, and the evidence shows that she did deliver the package to James Simpson, who was the principal postal patron at HCR 01, Box 29, Jeffersonton. Since sealed packages subject to letter postage are free from postal inspection except in a manner permitted by the Fourth Amendment, *see United States v. Van Leeuwen*, 397 U.S. 249, 90 S. Ct. 1029, 1031 (1970), each defendant had a reasonable expectation of privacy and, therefore, standing to object to the diversion and opening of the package.

Defendants assert that retention by the postmistress of the package on Saturday, May 23, and sending of the package to Richmond by her at the direction of the postal inspectors for handling by the Postal Inspector violates the Fourth Amendment.

The court does not so find. The postmistress caused the package to be examined by the police officer and the drug dog on the day of receipt at her post office. Upon the dog Argus' alerting, she called and was directed by the postal inspectors to send the package to their office in Richmond. It was received by Green on the next working day,

Tuesday, and he promptly obtained a search warrant to open the package, which he did. This diversion does not violate any constitutional right of defendants.

The next issue is whether the search warrant was defective because the affidavit in support thereof was insufficient, in that Shaw's findings concerning the drug dog Ben which Green used in his affidavit and which the magistrate relied upon, were not true. Shaw's findings attached to the application for the May 26 search warrant recite that when Ben alerts, he has detected the presence or the odor of heroin, cocaine, marijuana or hashish; that every time Ben has alerted, heroin, cocaine, marijuana or hashish has been found where so indicated; that Ben has never made a false alert.

However, Shaw testified that the dog would alert to the odor of these substances; that at various times, none of these substances were present, but on some of those occasions, the possessor of the place or package sniffed by the dog admitted one of these substances had been there previously. The court must infer that on some other occasions, Shaw simply himself concluded that one of the substances had been there when Ben alerted but nothing was found.

As the defendants argue, the drug dog's ability may be too good, since in this case no marijuana, hashish, cocaine or heroin was found in this package. Shaw opined that the package had been exposed to one of the substances giving it an odor to which the dog alerted.

Thus the findings of Shaw, relied on by affiant Green and therefore by the magistrate, were not correct. Without the accuracy of Ben's alert, the affidavit did not establish probable cause for the issuance of the search warrant. The Commonwealth argues that should the court find probable cause was lacking for the issuance of the search warrant, nevertheless the magistrate issued the warrant, and Green, in good faith reliance thereon, executed the warrant by opening the package. It relies on *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), and Virginia cases recognizing the good faith exception, *e.g.*, *McCary v. Commonwealth*, 228 Va. 219, 232 (1984).

However, the good faith exception does not apply when the officer obtaining the warrant does not have reasonable grounds for believing that the warrant was properly issued. The U.S. Supreme Court pointed out in *Leon* that it is necessary to consider the objective reasonableness, not only of the police officer who executed the warrant, but also of the officer who obtained it (here, one and the same, Green), or who

provided information material to the probable cause determination (here, Shaw). 104 S. Ct. at 3420, n. 24.

The court finds that the good faith exception does not apply under the facts in this case. The search warrant not being based on probable cause, the evidence resulting from the search of the package will have to be suppressed; that is, the contents of the package. Further, the search of the package having been illegal, the planting of the beeper in the package therefore was illegal and the evidence adduced from the use of the beeper must also be suppressed.

The court further concludes that were the search of the package somehow permissible, the evidence before the court shows only that dried mushrooms were found in plastic bags in the package. No evidence was presented that these mushrooms were a controlled substance or appeared to Green, based on his training and experience, to be a controlled substance.

Defendants asserted in oral argument, and the Commonwealth's Attorney did not contradict the assertion, and the court's recollection is, and notes reflect, that at no time did the evidence indicate that the mushrooms were psilocybin mushrooms. While psilocybin is a Schedule I controlled substance, see Va. Code § 54.1–3446, it is a matter of common knowledge as a part of the general experience of society that not all mushrooms, dried or otherwise, are controlled substances.

The effect of this lack of evidence is that there was no basis for placing a beeper in the package once it was opened and no contraband was found. The evidence flowing from the use of the beeper must be suppressed on this ground.

Having so ruled above, the court does not address the issue of the effect of a federal officer, Postal Inspector Green, placing a beeper in the package returned to the U.S. Mail, contrary, according to his testimony, admitted without objection, to federal law or regulation, without first obtaining a federal court order.

Nor, as to Simpson, does the court address the legality of the actions of the law enforcement officers as they arrived at his dwelling after the beeper speeded up indicating the package was being opened. Since the court has found no evidence in the record to show that the package contained a controlled substance, no showing can be made of probable cause that Simpson was committing a crime, which could have combined with the exigent circumstances which would have existed if

Simpson opened the package and found the beeper and the dried mushrooms, to permit entry at Simpson's house.