UNITED STATES of America, Plaintiff,

v.

**Carlos VALENZUELA–VARELA, Barbara Bourcheau, Defendants.**

No. CR97–030–M–DWM.

United States District Court, D. Montana, Missoula Division.

Aug. 18, 1997.

Edmund F. Sheely, Jr., Cannon & Sheeny, Helena, MT, Henry J. Florence, Henry J. Florence, Henry J. Florence, Ltd., Phoenix, AZ, for Barbara Bourcheau.

David F. Ness, Ness Law Office, Missoula, MT, for Carlos Valenzuela–Varela.

Kris A. McLean, Office of U.S. Atty., Missoula, MT, for U.S.

## ORDER

MOLLOY, District Judge.

### I. Background

Defendant Barbara Bourcheau and co-defendant Carlos Venenzuaela–Varela were indicted on May 22, 1997, in a single count charging conspiracy to distribute methamphetamine.

Defendant Bourcheau filed a Motion to Suppress on July 11, 1997. She seeks to suppress one ounce of methamphetamine found by police in a Federal Express package on April 30, 1997, in Tempe, Arizona, on the grounds that the seizure of the package was unlawful. An evidentiary hearing, followed by oral argument, was held on July 30, 1997. In my view the motion to suppress must be denied.

### II. Facts

The pertinent facts are those developed during the testimony of Detective John Bier of the Tempe Police Department (Arizona) in the evidentiary hearing. Essentially, he intercepted a package that he thought contained drugs. Officer Bier is a canine officer

working undercover in drug interdiction operations. A primary responsibility of his job is drug interdiction by means of checking packages in the mails. The Federal Express (Fed Ex) office involved here is a regular part of his "beat."

On April 29, 1997, Bier went to the Tempe office of Fed Ex at around 6 p.m. His express purpose was to check packages. He chose that time because the conveyor belt which loads the packages to the trucks starts up at approximately 5:45 p.m. The day this seizure took place, he left "Luke," his drug-sniffing dog, in the back of his vehicle while he inspected packages. The police car with the dog in it was parked in the Fed Ex parking lot.

Bier examined between 10 and 20 questionable packages before his suspicions were aroused by the package in question. He focused on the package involved in this seizure because it was in the last group of 5 or 6 packages brought to the conveyor belt by Fed Ex staff. His suspicions were aroused by the following; the package had a handwritten label (the others did not); the sender paid in cash (the others did not); the package was brought to the Fed Ex office right at closing time; the sender's address (1513 West Buckeye) was 8–10 miles from the Tempe Fed Ex office; the street number of the sender's address was not listed in Cole's directory; and the zip code did not match the sender's street address.

Detective Bier seized the package without a warrant. He then took it to the Tempe Police Department Narcotics office around 7:30 p.m. By 10:00 p.m. his shift ended and he went home. No effort was made during this period to obtain a warrant to search or to justify seizure of the suspect package. At 8:00 a.m. the next morning, Brier contacted the postal inspector and verified that the sender's address was fictitious and that the zip code was wrong. At 1:00 p.m. the officer officially returned to work. He then used Luke to clear the auditorium at the police station. The package was placed in the auditorium so Luke could conduct a dog-sniff around 2:50 p.m. Luke alerted to the package. Bier then applied for a search warrant and opened the package at around 4:30 p.m. The package contained one ounce of methamphetamine. At around 6:00 p.m.

that evening, April 30, 1997, Officer Bier spoke with Montana law enforcement personnel to decide what to do next. It was agreed that Brier should send the package to Montana on May 1, 1997, for a controlled delivery on May 2, 1997.

During his testimony, Bier admitted that he made no attempt to conduct a dog sniff at the Fed Ex office on the evening that he seized the package. He did not take Luke out of the vehicle and conduct a dog sniff at the Fed Ex facility, nor did he conduct a dog sniff that evening at the police station. In Bier's view, a proper dog-sniff takes 20 to 30 minutes to properly set up. Because conditions at the Fed Ex facility were not conducive to an accurate dog-sniff, he claims he did not do one. According to the officer, when the Fed Ex trucks leave to take packages to the airport at 6:45 p.m. and they will not wait for law enforcement. In his view, the package could not make the plane that evening, so he saw no reason to immediately conduct the dog-sniff.

### III. Discussion

Bourcheau mounts a two-pronged attack on the seizure of the package. First, she argues that the facts known to Bier did not justify reasonable suspicion to seize the package. Second, even if Bier was justified in seizing the package in the first instance, the package was held for an unreasonable length of time. In particular, Bourcheau argues that Bier failed to act diligently when he waited nearly twenty hours to have a dog sniff the package.

The government argues the facts described by Bier create ample legally reasonable suspicion for the seizure. Second, the government notes that a delay of twenty hours in executing the dog sniff and execution of the ensuing warrant is not unreasonable under governing Ninth Circuit caselaw.

At oral argument counsel for the government acknowledged that he does not argue there was no Fourth Amendment seizure when Detective Bier held the package overnight. Counsel conceded that if the court determines that a seizure occurred, the issue would be whether the seizure was reasonable under the Fourth Amendment.

## A. Detective Bier's Actions Constitute a Seizure Under the Fourth Amendment

In *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) [1], the Supreme Court extended the principles of *Terry v. Ohio* to the warrantless seizure of personal effects on the basis of less than probable cause. An exception to the probable cause requirement for the seizure of persons or effects involves balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests [in interdicting drugs] can support a seizure based on less than probable cause." *Place*, 462 U.S. at 703, 103 S.Ct. at 2642. Such a seizure is only justified "where the authorities possess specific and articulable facts warranting a reasonable belief" that contraband is present. *Id.*

The Ninth Circuit holds that if no intrusion takes place then no seizure occurs, in which case no requirement of reasonable articulable suspicion to detain a package ever arises. *See United States v. England*, 971 F.2d 419 (9th Cir.1992). England mailed a package in Los Angeles for delivery to Birmingham, Alabama, by Express Mail. Postal inspectors suspected it contained narcotics. The package was set aside and exposed to a dog-sniff. The dog responded positively. The package was then sent on its regular flight to Alabama. No delay was occasioned by the interception of the package. The package was opened by law enforcement in Alabama pursuant to a warrant. England was arrested and convicted. He contended on appeal that the interception of the package was an unreasonable seizure. *Id.* at 420.

Property is seized when there is "some meaningful interference with an individual's possessory interests in that property." *Id.* (citing *United States v. Jacobsen*,[2] 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Without such interference, there is no seizure. *Id.* For Fourth Amendment purposes it is "not the physical movement of the property" that indicates whether a seizure has occurred, but rather the "extent of the interference with the [owner's] possessory interest in his property." *Id.*

The Ninth Circuit rejected England's argument that any detention of mail is a seizure. Significantly, England's packages were not delayed by their detention. The court observed that it "need not consider whether the postal inspectors had reasonable and articulable suspicion to seize the packages before they obtained the search warrants, because until the packages were searched pursuant to those warrants, no seizure occurred." *Id.* at 421.

Here, by contrast, a package presented to Fed Ex for overnight delivery was kept from timely delivery so that further investigation could take place. The suspicions of Officer Bier were aroused by the factors discussed above. The sender may have paid cash, but the method of payment does not alter the fact that the sender paid a premium for Fed Ex overnight delivery. And even though the sender may have brought the package to the Fed Ex office at close of business, the sender nonetheless fully expected that the package would be delivered overnight. Under these circumstances, I find that the detention and resulting delay of a package presented to Fed Ex for overnight delivery is a meaningful interference in the sender's possessory interests in that package.[3] Unquestionably, the package was

---

1. The Court also held in this case that a dog sniff is not a search under the Fourth Amendment. *Place*, 462 U.S. at 707, 103 S.Ct. at 2644–45.

2. In *Jacobsen*, the issue was whether the authorities exceeded the scope of prior private search of a damaged package, and it is not instructive here except in defining "seizure." *Jacobsen*, 466 U.S. at 113 & n. 5, 104 S.Ct. at 1656 & n. 5, 80 L.Ed.2d at 94 & n. 5 ("While the concept of a 'seizure' of property is not much discussed in our cases, this definition follows from our oft-re-

peated definition of the 'seizure' of a person within the meaning of the Fourth Amendment—meaningful interference, however, brief, [sic] with an individual's freedom of movement.").

3. Interestingly, Officer Bier admitted he could have allowed the package to be delivered and accomplished the same goal by calling Montana law enforcement with a heads up. He did not follow this procedure because in his experience local law enforcement offices do not follow up on tips from out of state.

seized based on the officer's experience and suspicions. But, it was seized and held without a warrant. The overnight detention of the package amounted to a seizure under the Fourth Amendment.

## B. Reasonable Suspicion

■ As noted, under *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), an officer must have "reasonable, articulable suspicion" to seize a package thought to contain contraband *Id.* at 703, 103 S.Ct. at 2642–43. An officer's response is viewed against the totality of the circumstances. *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1989). The officer must act on something more than a mere "hunch." He or she must have "some minimal level of objective justification" for the action taken. *Id.* at 7, 109 S.Ct. at 1585 (also noting that "[t]he concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules' ").

Here, the question is whether Detective Bier had a reasonable suspicion when he seized the package at issue. The proof showed that this one package was picked and held from literally thousands of packages in the Fed Ex station that day. In the context of selecting one package in a Fed Ex sorting depot, there is a different analysis of circumstances than when an officer is assessing human behavior with all its nuances and complexities. Nonetheless, Detective Bier sufficiently stated reasons for selecting the suspect package from among the five or six that were brought to the Fed Ex conveyor belt after close of business, reasons that show he acted on more than a mere hunch. Bier had a reasonable articulable suspicion for his seizure of the package in question.

## C. Reasonableness of Extent of Seizure

■ Even if there was legal justification to detain the package, defendant argues the resulting seizure was unreasonable under the Fourth Amendment. In arguing that the seizure was unreasonable, the defendant relies on *Place,* discussed above.

*Place* can be distinguished. *Place* involved the seizure of two suitcases *from the personal possession of the owner* at an airport terminal. The *Place* court found that "[t]he

intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in nature and extent." *Place,* 462 U.S. at 705, 103 S.Ct. at 2643. The Court carefully distinguished between a seizure "from the immediate custody and control of the owner," and one "made after the owner has relinquished control of the property to a third party." *Id.* Thus, the Court held that the seizure of two suitcases for 90 minutes was unreasonable because effectively it amounted to a seizure of the person for 90 minutes. *Id.* at 709, 103 S.Ct. at 2645–46. The degree of intrusiveness is directly related to the facts implicating the owner's presence while the items are held for examination.

*Place* is inapposite to this case. No liberty interest was implicated here. The package at issue was seized without any concomitant seizure or detention of the defendant.

A leading case on seizures of packages in the mails is *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). There, the Court held that it was reasonable to hold two packages for 29 hours in order to compile probable cause for a warrant to open them, when the packages were suspected of containing counterfeit coins. *Van Leeuwen,* 397 U.S. at 253, 90 S.Ct. at 1032, 25 L.Ed.2d at 286. The detention of a package in the mail is on the fringe of the Fourth Amendment's protection of the right to be secure in one's person, house, papers and effects. *Id.* at 251–52, 90 S.Ct. at 1031–32, 25 L.Ed.2d at 285. ("Theoretically—and it is only theory that respondent has on his side—detention of mail could at some point become an unreasonable seizure of 'papers' or 'effects' within the meaning of the Fourth Amendment.").

In the Ninth Circuit there is no bright line rule for the length of time a package may reasonably be detained under the Fourth Amendment. Instead, the test is, "[B]ased upon the facts, was the delay in handling the packages unreasonable?" *United States v. Aldaz,* 921 F.2d 227 (9th Cir.1990); *compare United States v. Hillison,* 733 F.2d 692 (1984) (no Fourth Amendment violation when package held for 9 hours for police to pursue further investigation) *with United States v.*

*Dass,* 849 F.2d 414 (9th Cir.1988) (detention of packages from 7 to 28 days in order to obtain search warrants was unreasonable). In *Aldaz,* the delay was not unreasonably long because it was due in part to conditions in the "Alaska bush," and a dog sniff occurred "at the first available time." *Aldaz,* 921 F.2d at 231; *see also United States v. Martinez,* 869 F.Supp. 202, 207 (S.D.N.Y. 1994) (finding that a 22 hour delay between initial seizure of package and obtaining warrant was not unreasonable, and rejecting argument that officer could have acted more expeditiously).

Here, the time between the initial "seizure" and the event establishing probable cause by way of the dog sniff was not unreasonable. *Van Leeuwen* is persuasive because it upheld a delay of 29 hours. It was not unreasonable for Detective Bier to remove the package from the Fed Ex facility in order to conduct an uncontaminated dog-sniff. He acted with reasonable diligence. He called the Postmaster at 8:00 a.m. on the morning after he seized the package in order to check whether the sender's address was fictitious. He completed the dog-sniff within two hours of returning to duty on the day following the seizure. The seizure here was not unreasonable under the Fourth Amendment.

Wherefore, IT IS ORDERED:

(1) Defendant Bourcheau's Motion to Suppress is **DENIED.**

(2) Trial in this case is set for September 29, 1997, at 8:45 a.m. in the Russell Smith Courthouse, Missoula.

(3) The plea agreement deadline is **Friday, September 19, 1997.**

(4) Jury instructions (prepared in accordance with the original scheduling order) and trial briefs must be submitted on or before **September 24, 1997.**