UNITED STATES of America, Plaintiff,

v.

Dwaine EVANS, Sr., a/k/a Dwaine Steeple Evans and Dwaine Evans, Jr., a/k/a Dwaine Steven Evans, Defendants.

No. 97–40034–01/02–RDR.

United States District Court,
D. Kansas.

Jan. 30, 1998.

Robert D. Hecht, Scott, Quinlan & Hecht, Topeka, KS, Marilyn M. Trubey, David J. Phillips, Office of Federal Public Defender, Topeka, KS, Dwaine Evans, Sr, Topeka, KS, for Dwaine Evans, Sr., aka Dwaine Steeple Evans, defendant.

### MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

The defendants are charged in a two-count indictment. In each count of the indictment, the defendants are charged with attempting to possess with the intent to distribute in excess of 500 grams of powder cocaine in violation of 21 U.S.C. § 846. On October 17, 1997, the court held a hearing on the defendants' pretrial motions. Every motion filed by the defendants was ruled on except defendant Evans, Sr.'s motion to suppress. The court continued the hearing on this motion due to the unavailability of a witness and the need for defense counsel to examine some documents that were supplied by the government. On January 23, 1998 the court concluded the evidence on this motion. The

court is now prepared to rule on the motion to suppress.

## MOTION TO SUPPRESS

Defendant Evans, Sr. seeks to suppress all the items seized and any statements he made at the time of the searches on December 11, 1996 and May 5, 1997. He contends that (1) the seizure of a package by Federal Express employees on December 11, 1996 was illegal; (2) the subsequent sniff search of the package by a drug dog did not provide probable cause to obtain a search warrant for his place of business; (3) any evidence obtained as a result of the invalid warrant issued on December 11, 1996 must be suppressed as fruit of the poisonous tree; (4) law enforcement officers conducted an illegal warrantless search of his place of business prior to the issuance of the search warrant on December 11, 1996; (5) the evidence seized during the search on May 5, 1997 must be suppressed as fruit of the poisonous tree because the search warrant was based on evidence seized from his business on December 11, 1996; and (6) the search warrant issued on May 2, 1997 was overbroad.

## FINDINGS OF FACT

1. Richard Hundertfund of the Topeka Police Department learned from a confidential informant that on several occasions Federal Express had delivered packages from California to Superior Auto Body at 2941 S.E. Fremont in Topeka, Kansas, a business owned by defendant Evans, Sr., that contained cocaine. The confidential informant told Officer Hundertfund the cocaine was then distributed by defendant Evans, Jr.

2. On December 10, 1996, Officer Hundertfund contacted the manager of the Topeka Federal Express office and asked him to watch for packages from California that were to be delivered to Superior Auto Body and Dwaine Evans. The manager agreed to notify the police if any such packages were discovered.

3. On December 11, 1996 at 7:35 a.m., Officer William White received a call from the Federal Express manager. He was advised that a package from a California address to Dwaine Evans at Superior Auto Body had been received. Officer White went to the Federal Express office and observed the box. He requested a drug dog.

4. Officer Kelly Roberts and his drug detection dog, Buckley, arrived at the Federal Express office at 8:10 a.m. Officer White took the package and placed it on a shelf in a small room with a number of other packages. Neither Officer Roberts nor Buckley saw the package prior to its placement in the room. Officer Roberts took Buckley to the small room, released him from his leash, and allowed him to search the room. Buckley showed interest in the package that had been placed by Officer White in the room. Buckley indicated that he wanted the package placed on the floor. The package was placed on the floor and Buckley gave an aggressive alert to it. Officer Roberts took Buckley away from the package and then he returned to it and again alerted to it.

5. As the officers were preparing to leave, Federal Express personnel indicated that another package from the same address in California had been discovered. This package was to be delivered to a different Topeka address. This package was taken to the same room as the other package and placed in a different location. Officer Roberts followed the same procedures in allowing Buckley to search for the package. Buckley again showed interest in this package and it was placed on the floor. Buckley alerted to it once it was placed on the floor. Officer Roberts asked officer White to "breathe the package," i.e, to step on it so the dog could smell it better. Officer White did so and the dog again alerted to the package.

6. The officers then obtained a search warrant for the packages. The packages were opened and cocaine was found in them. The first package was then delivered to Superior Auto Body by a law enforcement agent dressed as a Federal Express employee. Shortly after the delivery, a large group of law enforcement officers entered Superior Auto Body. Officer White spoke with defendant Evans, Sr. and asked for consent to search the business. Defendant Evans, Sr. consented to a search and told Officer White that he could search anywhere. The officers then located the Federal Express package. Another search warrant was sought and obtained. During the execution of this search

warrant, the officers seized the Federal Express package.

7. On May 2, 1997 another search warrant was issued for Superior Auto Body. The warrant authorized a document search. It was executed on May 5, 1997, and the defendant's records were seized.

## CONCLUSIONS OF LAW

1. The initial seizure of the package by Federal Express employees and the subsequent detention of the package by law enforcement officials prior to the alert by the drug dog did not constitute a Fourth Amendment violation. Temporary detention of packages for purposes of investigation is not an "unreasonable seizure" in violation of the Fourth Amendment, provided (1) law enforcement authorities have a reasonable suspicion of criminal activity; and (2) the packages are not detained for an unreasonable length of time. *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); *United States v. Glover,* 104 F.3d 1570, 1576–77 (10th Cir.1997). *See also United States v. Place,* 462 U.S. 696, 702, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (applying doctrine of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to detention of personal property, and holding that detention of luggage on less than probable cause, in order to pursue a limited course of investigation, does not violate defendant's Fourth Amendment rights where there is "reasonable articulable suspicion" that luggage contains contraband or evidence of a crime). Here, the officers had reasonable suspicion to believe that the package contained drugs. The package was detained only a short period in order to allow for inspection by a drug dog and to obtain a search warrant. The package was then promptly delivered to the defendant. This investigatory detention was in conformity with the dictates of the Fourth Amendment.

2. The dog's alert to the package provided probable cause to obtain a search warrant. The law is well settled that a positive dog alert by a trained narcotics dog is generally sufficient to support a finding of probable cause. *United States v. Ludwig,* 10 F.3d 1523, 1528 (10th Cir.1993); *United States v. Gonzalez–Acosta,* 989 F.2d 384, 388 (10th Cir.1993). The evidence revealed that Buckley is a properly trained and certified drug detection dog.

3. The warrantless search of defendant Evans, Sr.'s business prior to the issuance of the search warrant on December 11, 1996 was proper because defendant Evans, Sr. consented to the search. Voluntary consent is an exception to the unreasonableness of a warrantless search or seizure. *United States v. Lowe,* 999 F.2d 448, 451 (10th Cir. 1993). The consent here was voluntary and the search did not exceed the scope of the consent.

4. The search warrant issued on May 2, 1997 was not illegal as fruit of the poisonous tree under *Wong Sun v. United States,* 371 U.S. 471, 484–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (under "fruit of the poisonous tree" doctrine, exclusionary rule bars the admission of evidence obtained directly or indirectly through the exploitation of police illegality). The court finds no Fourth Amendment violations in the events that led to the issuance of the search warrant on May 2, 1997.

5. The search warrant issued on May 2, 1997 and executed on May 5, 1997 was not overbroad. The search warrant allowed the officers to seize the following:

Documents concerning cocaine trafficking including but not limited to records, books, notes, and/or ledgers showing amounts sold, "fronted," amounts owed, money collected and identities of distributors; bank records, and all other books, records, receipts, notes, or other records evidencing the acquisition, transfer, or expenditure of monies since January 1, 1994; photographs of controlled substances, assets, or co-conspirators.

All forms of computer hardware, software, and memory devices associated with the computer systems.

[M]emory typewriters, electronic address books and personal computers and laptop computers.

*Davis v. Gracey,* 111 F.3d 1472, 1478 (10th Cir.1997) provided the following guidance on the consideration of whether search warrants are overbroad:

"The fourth amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a 'general, exploratory rummaging in a person's belongings.'" *Voss v. Bergsgaard,* 774 F.2d 402, 404 (10th Cir.1985) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Id.* "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

We have stated that "[t]he test applied to the description of the items to be seized is a practical one," [*United States v.*] *Leary,* 846 F.2d [592] at 600 [ (10th Cir. 1988) ], and the language in warrants is to be read in a "common sense fashion," *In re Search of Kitty's East,* 905 F.2d [1367] at 1374 [ (10th Cir.1990) ]. Thus, "'[a] description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized.'" *Leary,* 846 F.2d at 600 (quoting *United States v. Wolfenbarger,* 696 F.2d 750, 752 (10th Cir.1982)) (internal quotation omitted). "As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." *Id.* at 602. Moreover, "[e]ven a warrant that describes the items to be seized in broad or generic terms may be valid 'when the description is as specific as the circumstances and the nature of the activity under investigation permit.'" *Id.* at 600 (quoting *United States v. Santarelli,* 778 F.2d 609, 614 (11th Cir.1985)).

The Tenth Circuit has consistently upheld search warrants cast in comparably broad terms, where the subject of the search was a drug trafficking or drug dealing business, and where circumstances permitted only a more general listing of the items to be seized. *See United States v. Wicks,* 995 F.2d 964, 973–74 (10th Cir.1993).

The court finds that the warrant of May 2, 1997 is valid because it described the items to be seized as specifically as possible under the circumstances. The warrant made clear that officers were limited to the seizure of items related to cocaine trafficking and the expenditure of monies after January 1, 1994. The description of the computer equipment was as specific as possible since officers executing the warrant could not determine what information was contained in them until an evaluation was later conducted.

6. With the aforementioned conclusions, the court finds no merit to the defendant's contention that the items seized from his business on May 5, 1997 must be suppressed as fruits of the poisonous tree. The court has found no Fourth Amendment violations in the searches and seizures of the defendant's property.

7. In sum, the defendant's motion to suppress shall be denied.

**IT IS THEREFORE ORDERED** that defendant Evans Sr.'s motion to suppress (Doc. # 61) be hereby denied.

**IT IS SO ORDERED.**