Cavanagh, J.
(dissenting). I cannot join in the decision of the lead opinion to chip away at the protections afforded by the Fourth Amendment of our United States Constitution. In this case, the probable cause supporting the defendant’s ultimate arrest stemmed from the officer’s decision to remove and inspect photographs that the defendant was carrying in his front pocket. I cannot support the conclusion of the lead opinion that the photographs were validly seized and inspected. I am unconvinced that the requirements of the Fourth Amendment were satisfied.[1] Therefore, I respectfully dissent.
*346 I
In this case, the defendant was ultimately charged with three drug-related offenses. The evidence linking the defendant to the crimes was discovered only after a series of searches and seizures. This appeal involves examination of several of the incidents occurring between the time the defendant was initially detained and the time that he was charged.
The lead opinion adequately discusses the key facts of the case. In brief, it correctly points out that (1) the police initially came into contact with the defendant while investigating a trespass violation, (2) the patdown of the defendant occurred only after a baggie of marijuana and a wad of money were found on his counterpart, (3) the officer testified that he removed photographs from the defendant’s pocket on suspicion that they were blotter acid, (4) the officer first placed the photographs face down on the roof of the car and later flipped them over and examined them, (5) the photographs were later used to obtain a search warrant, and (6) the fruits of the search made pursuant to the warrant formed the basis for arresting and charging the defendant.
Next, the lead opinion adequately identifies the issues presented on appeal. We are faced with determining whether the defendant’s constitutional right to be free from unreasonable searches and seizures was violated when: (1) the defendant was stopped by the officers, (2) the defendant was frisked, (3) the defendant’s photographs were removed from his front pocket, or (4) the officer flipped the photographs *347 over and examined them.[2] This case involves a series of searches and seizures subject to Fourth Amendment scrutiny. First the defendant was stopped for the purpose of investigating possible criminal activity. Next, the defendant was frisked under the auspices of protecting the investigating police officer. Third, an item was seized from the defendant’s front pocket. Fourth, the item seized was searched. Fifth, the defendant was detained and taken to the police station. Sixth, the defendant’s home was searched. Seventh, marijuana was seized from the defendant’s home. Thereafter, the defendant was charged with the offenses forming the basis of the instant trial.
It is crucial at the outset to understand the basic premises guiding search and seizure law because Fourth Amendment jurisprudence provides that a criminal defendant has a claim for the suppression of evidence that has been gathered in violation of his Fourth Amendment rights. Wong Sun v United States, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).
First, it is important to understand that searches and seizures may raise distinct concerns. A “search” for Fourth Amendment purposes hinges on a person’s privacy interest. The touchstone test for examining a search is whether a person has a legitimate expectation of privacy in the place to be searched. Katz v United States, 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). A seizure, on the other hand, deprives the individual of dominion over his person or property. United States v Jacobsen, 466 US 109; 104 S Ct 1652; *348 80 L Ed 2d 85 (1984); Horton v California, 496 US 128; 110 S Ct 2301; 110 L Ed 2d 112 (1990). A seizure occurs when some meaningful governmental interference with an individual’s possessory interest in property has occurred. Jacobsen, supra. In the context of an investigatory stop, a seizure occurs when an officer, by means of force or authority, restricts a person’s liberty of movement. Terry v Ohio, 392 US 1, 27; 88 S Ct 1868; 20 L Ed 2d 889 (1968).
The United States Supreme Court has made it clear that searches without warrants are unreasonable per se, subject to a few “specifically established and well-delineated exceptions.” Katz at 357. Similarly, the Court has stated that seizures must be circumscribed “in area and duration by the terms of the warrant or valid exception to the warrant requirement.” Horton at 139. In the context of searches that result in the seizure of an item suspected to be contraband, the United States Supreme Court has recognized that a government agent’s exercise of dominion and control over the item may be a “reasonable” seizure for Fourth Amendment purposes when the effect seized cannot be supported by a reasonable expectation of privacy, and when the agent can show that he had probable cause to believe that the effect contained contraband. Jacobsen, supra. Otherwise, the search will be constitutionally unreasonable.
In this case, the people place reliance on two doctrines that sometimes provide justification for searches and seizures without warrants. The first of these doctrines, the “stop and frisk” doctrine, pertains to the ability of law enforcement officials to institute investigatory stops and conduct weapons patdowns. The second doctrine, the “plain feel” doctrine, relates to an officer’s ability to seize items detected through *349 tactile perception during a patdown without a warrant when the officer perceives the items to be contraband. Each of these doctrines will be discussed.
A. THE STOP AND FRISK DOCTRINE
1. GUIDING LEGAL PRINCIPLES
The “stop and frisk doctrine” has roots in the United States Supreme Court decision in Terry v Ohio, which held that a reasonable investigatory stop of criminal defendants is permissible when an officer “observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot . . . ”IcL. at 30. Further, the officer may conduct a “patdown” search for weapons when the “officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others . . . "Id. at 24.
In the event of a Terry stop, courts should take into account the whole picture, and determine whether the stop was reasonable under the totality of the circumstances. United States v Cortez, 449 US 411, 418; 101 S Ct 690; 66 L Ed 2d 621 (1981). Under the totality of the circumstances, a stop will be considered valid only when the detaining officer can reasonably articulate a particularized and objective basis for suspecting that the individual stopped had been engaged in or was about to engage in criminal activity. Terry, supra at 27. A hunch unsupported by particularized suspicion will not justify the seizure of a person. Id.
When the seizure of a defendant does not comport with Terry, it will be deemed unreasonable and the evidence flowing from the seizure may be suppressed as fruit of the poisonous tree. Wong Sun; People v *350 Shabaz, 424 Mich 42, 65; 378 NW2d 451 (1985). Pursuant to Wong Sun, “the fruits of the officers’ illegal action are not to be admitted as evidence unless an intervening independent act of free will purges the primary taint of the unlawful invasion.” Shabaz, supra at 66.
2. APPLICATION TO THE FACTS
In the present case, the defendant was stopped and frisked on the following grounds: he and Holder were spotted in the area where a trespass violation had been reported, the individuals were detained because Holder was too intoxicated to drive away, Holder was found to be in possession of marijuana, and there was a clear relationship between Holder and the defendant. The detaining officer testified that his twenty-three years of experience taught him that persons in possession of drugs also frequently possess weapons. As such, the officer felt that the defendant might pose a safety threat to himself or to his partner.
The lead opinion opines that, under the totality of the circumstances, the detaining officer was reasonably suspicious of the defendant because the defendant was initially detained for questioning in an area where a suspected trespass had been reported. Similarly, the lead opinion concludes that the defendant was reasonably detained after the officers found marijuana and money on the defendant’s companion, Holder.
a. THE INITIAL DETENTION OF THE DEFENDANT
I agree with the lead opinion that the police did not violate the defendant’s Fourth Amendment rights by approaching the automobile he shared with Holder. *351 The constitution permits law enforcement officers to approach an individual in a public place for the purpose of asking him if he is willing to answer some questions. Shabaz, supra at 56, relying on Florida v Royer, 460 US 491; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (opinion of White, J.). Where there is no involuntary detention of a defendant, there is no Fourth Amendment seizure within the meaning of the Fourth Amendment. Id. In his brief, the defendant acknowledges that the police did not question or approach him until after they found marijuana on Holder. Thus, I would not find a violation of the defendant’s rights stemming from the officers’ decision to approach and question Holder while the defendant was a passenger in his car.
b. THE CONTINUED DETENTION OF THE DEFENDANT AFTER MARIJUANA WAS FOUND ON HOLDER
The lead opinion next presents the question whether the defendant was further properly stopped after marijuana was found on Holder. After Holder was searched and detained, the police asked the defendant to step out of the vehicle. At that point, he was clearly detained. The officers testified that the defendant was asked to get out of the car so that a patdown search for drugs and weapons could be conducted. Thus, once the officers asked the defendant to leave the car so that he could be searched, their inquiry moved beyond the realm of merely stopping a person to inquire whether the person is willing to answer questions and into the realm of searches and seizures subject to the constraints of Terry.
An officer may initiate an investigatory stop pursuant to Terry when he can articulate a reasonable basis for suspecting that the particular individual *352 detained has committed, or is about to commit, a crime. Further, an officer may conduct a “frisk,” a form of limited weapons search, when he has reason to believe that the person suspected of a crime is presently armed and dangerous. However, the officer’s ability to investigate the circumstances of a crime on the basis of reasonable suspicion are limited. Full blown searches and seizures must be based on probable cause. Minnesota v Dickerson, 508 US 366, 378; 113 S Ct 2130; 124 L Ed 2d 334 (1993).
According to the lead opinion, “after the marijuana was found, the police properly detained defendant for the purpose of conducting a limited search for weapons on the basis of reasonable suspicion.” Ante at 327-328. In the view of the lead opinion, there was suspicion because the defendant was the passenger in a vehicle in which criminal activity was discovered, drugs were found on Holder, the officer was told that Holder and the defendant had been together all evening, and Holder yelled to the defendant not to say anything. Thus, under the totality of the circumstances and in light of the fact that the officer testified that experience taught him that people with drugs often have weapons, the lead opinion finds the requisite level of reasonable suspicion for a patdown.
Ultimately, I agree with the conclusion of the lead opinion that the patdown in this case is sustainable under Terry. Thus, I join the holding of the lead opinion that the stop and frisk were constitutionally permissible. However, because I believe that the lead opinion jumps too readily from an officer’s ability to make investigative inquiries to his ability to stop and frisk, I feel compelled to offer a somewhat more extended analysis than that offered by the lead opinion. The lead opinion bolsters its finding of reason *353 able suspicion primarily by pointing out that the defendant was and had been in the company of Holder, that Holder was in possession of marijuana, that Holder yelled to the defendant upon being arrested, and that the detaining officer testified that weapons often accompany drugs. Yet, the lead opinion fails to clarify that the defendant could not be stopped and frisked merely on the basis that he was associated with Holder. Rather, the circumstances had to indicate that the defendant himself was articulably and reasonably suspected of criminal wrongdoing, and suspected of being armed and dangerous.
In Ybarra v Illinois, 444 US 85; 100 S Ct 338; 62 L Ed 2d 238 (1979), the United States Supreme Court specifically rejected an argument that a person may be stopped and frisked simply for being in an area where drugs are found. There, the police had a warrant to search a bar and bartender for heroin. Ybarra was one of the patrons in the bar when the police arrived to perform the search. They conducted a protective patdown of Ybarra and the other patrons in the bar. In the process, the police seized a cigarette pack from Ybarra and found packets of heroin inside. The Court held that the evidence was subject to suppression on the grounds that the police lacked reasonable suspicion to conduct a patdown search of Ybarra simply because he was in an area where a drug search was occurring pursuant to a warrant.[3]
In the instant case, the defendant was patted down on the basis of the officer’s testimony that his experience taught him that people who have drugs often *354 also have weapons. When the defendant was patted down, the police knew that Holder was in possession of an illegal substance, not that the defendant was in possession of an illegal substance.[4] The analysis of the lead opinion comes dangerously close to doing exactly what Ybarra prohibits—allowing a frisk of a person simply because that person is in propinquity with another reasonably suspected of engaging in criminal activity.
While I agree that the police officers were justified in conducting a patdown under the specific facts of this case, I believe that we must take great care not to cross the threshold established in Ybarra. It cannot be summarily concluded that the defendant himself could reasonably be suspected of engaging in criminal wrongdoing simply because of his association with Holder. In order to meet the requirements of the Fourth Amendment, it must be shown not only that the officers had reason to suspect criminal wrongdoing, it must also be established that the officers had a reasonably articulable basis for suspecting that the defendant perpetuated the wrongdoing. Terry, supra. To the extent that the lead opinion could be read as overlooking the particularity requirement inherent in a reasonable suspicion inquiry, I disagree with it.[5]
There is no bright-line test for determining whether articulable and particularized reasonable suspicion exists under the circumstances of an individual case. *355 However, this Court has discussed the concept in some detail. In Shabaz, the Court held that no reasonable suspicion existed where a defendant was stopped because he was observed stuffing a paper bag under his clothing while leaving an apartment complex in a high crime area, and because he “took off running” when officers observing him slowed their unmarked police car to a stop. Id. at 60. In reaching the conclusion that reasonable suspicion was lacking under the circumstances, Justice Ryan, now judge of the Sixth Circuit Court of Appeals, stated for the Court:
The police were not investigating a recently committed crime in the area which may have been linked to the defendant, nor was he known to the officers as a suspect in a crime. There was no visible contraband on the defendant’s person; the officers could only guess at the contents of the paper bag. The defendant’s flight from plain-clothes pursuers in an unmarked car was at most ambiguous and at least understandable. [Id. at 64-65.]
While this quotation from Shabaz certainly makes it clear that Terry searches must be carefully scrutinized, I believe that in applying Terry, Shabaz also implicitly raised a distinction between situations in which an officer comes upon a person unknown to him and situations in which an officer is detaining specific individuals in association with the investigation of a particular crime.
The officers in this case were in the area investigating a trespass. Further, once marijuana was found on Holder, the officers were validly investigating another crime. Once Holder yelled to the defendant not to tell the officers a “f—ing thing,” the officers had a basis for suspecting that the defendant had information pertaining to the crime presently being investigated.
*356 Though it is true that the defendant had done nothing to indicate that he himself was in possession of drugs, the officers had an objective reason for suspecting that the defendant might have been involved in criminal wrongdoing. Moreover, the detaining officer’s testimony that he feared for his safety when taken together with the fact that the tension in the situation had escalated when marijuana was found on Holder, objectively justified the officer’s belief that the defendant posed a threat of being presently armed and dangerous. Thus, I believe that this case can more closely be analogized to Terry than to Ybarra. The circumstances of this case reveal a situation where the particular individuals were being investigated in association with the suspected commission of particular violations, rather than merely a situation where the defendant happened to be in an area where other crimes were suspected of being committed. Therefore, I would conclude that this case meets the threshold established by Terry and justified a limited weapons patdown.
H
Despite my agreement with the lead opinion that reasonable suspicion for a stop and frisk existed under the totality of the circumstances, I would affirm on the grounds that the seizure of photographs from Custer’s front pocket was constitutionally impermissible. I would hold that the scope of Terry was exceeded when the officer seized the photographs, and would further hold that the officer lacked probable cause.
The lead opinion concludes that the seizure without a warrant of the photographs from defendant during *357 the patdown search was valid under the Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution. According to the lead opinion, the seizure was justified by the “plain feel exception” to the warrant requirement, citing Dickerson at 373; People v Champion, 452 Mich 92; 549 NW2d 849 (1996). I disagree.
In a nutshell, the plain feel doctrine provides that police may seize nonthreatening contraband detected through the sense of touch during a patdown search, as long as the search remains within the bounds of Terry and as long as the search would be “justified by the same practical considerations that inhere in the plain-view context.” Dickerson at 375-376. Thus, courts considering whether an item may be seized under the plain feel doctrine must consider both the Terry doctrine and the plain view doctrine.
In Dickerson, the officer patted down the defendant, and in the process examined a lump in the defendant’s pocket that he believed to be cocaine. The Court held that the seizure was invalid because the incriminating character of the lump was not immediately apparent, and because the officer needed to conduct further examination in order to determine whether the lump was contraband. Though Dickerson itself invalidated the seizure of contraband made during a patdown search, the Court nonetheless stated that not all plain feel seizures are invalid per se. Still, the Court made clear that seizures stemming from a patdown must be carefully scrutinized:
Under the State Supreme Court’s interpretation of the record before it, it is clear that the court was correct in holding that the police officer in this case overstepped the bounds of the “strictly circumscribed” search for weapons allowed under Terry. Where, as here, “an officer who is *358 executing a valid search for one item seizes a different item,” this Court rightly “has been sensitive to the danger . . . that officers will enlarge a specific authorization furnished by a warrant or an exigency, into the equivalent of a warrant to rummage and seize at will. Here, the officer’s continued exploration of the respondent’s pocket after having concluded that it contained no weapon was unrelated to . . . the protection of the police officer and others nearby.” It, therefore, amounted to the sort of evidentiary search that Terry expressly refused to authorize, and that we have condemned in subsequent cases. [Id. at 378 (citations omitted).]
Thus, although Dickerson clearly refused to impose a categorical ban on the plain feel seizure of objects “whose identity is already known” because of their immediately apparent characteristics, the Court in no way implied that any and every object that may potentially have characteristics similar to certain types of contraband would be seizable. Id. at 377.
Dickerson also stated that the “plain feel” concept has roots in the “plain view” doctrine, and the competing concerns expressed in plain view cases can be analogized to the plain feel context. Thus, it is important to understand the basic principles underlying the plain view doctrine when determining whether a particular plain feel seizure is valid. Under the plain view doctrine: (1) the seizure without a warrant of evidence in plain view is permissible as long as the police did not violate the Fourth Amendment in arriving in a place from which the evidence could be plainly viewed, (2) an item of immediately apparent incriminating character must be in plain view in order to be seizable, and (3) the police must have a lawful right of access to the item being seized. Horton v California, supra; Coolidge v New Hampshire, 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971); Arizona v *359 Hicks, 480 US 321; 107 S Ct 1149; 94 L Ed 2d 347 (1987). The ability of a police officer to seize an item without a warrant pursuant to the plain view doctrine is thus circumscribed by the exigencies justifying the initiation of the search. Horton at 139-140. Further, “[i]f the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.” Id. at 140.
It is in light of these principles that the Dickerson Court enunciated its holding. The Court explicitly recognized that while Terry may authorize an officer to place his hands on a criminal defendant’s outer clothing, the Fourth Amendment is violated when the officer must conduct a further search in order to determine whether an object is contraband. In such instances, a seizure will be invalidated for lack of probable cause.
Thus, in plain feel seizure cases, courts must determine whether the scope of the patdown search remained within the bounds of Terry. If not, then the seizure made pursuant to the search would exceed the exigency justifying the search in the first instance. Additionally, courts must determine whether the object felt by an officer is immediately apparent as being contraband. The determination must be supported by probable cause. Where the mass and contours of the object do not make it immediately identifiable as contraband, seizure without a warrant is not justified.
In this case, I would hold that the photographs were invalidly seized from the defendant both because the officer exceeded the scope of the Terry search, and because the officer lacked probable cause *360 to remove them. First, it must be remembered that the patdown search of the defendant was purportedly initiated to protect the officer from a person suspected of being armed and dangerous. During the course of the patdown, the officer testified that he felt what he believed to be a piece of cardboard used as blotter paper for an illegal narcotic known as acid.
A. THE SCOPE OF TERRY
Clearly, the cardboard seized by the officer was not seized in order to advance the interest of protecting the officer. The officer did not remove the photographs on belief that they were a dangerous instrumentality, but on suspicion that they were cardboard. The officer further suspected that the item he felt was used to blot acid.
In my view, the lead opinion in this case is the first evil escaping the Pandora’s box opened in People v Champion.[6] In Champion, the majority extended the United States Supreme Court decision in Dickerson to encompass plain feel seizures of items that might contain contraband.[7] Justice Brickley dissented, explaining why seizures of items not appearing to be contraband themselves is illegal. Though Justice Brickley’s opinion did not win the day, I continue to *361 believe that it was correctly decided. I would adhere to his view, that when the officer patted the objects in the defendant’s pocket and knew that they were not a weapon, the removal of those objects was unrelated to the protection of the officer’s safety. Thus, the exigencies supporting the patdown were unrelated to the subsequent seizure.
Regardless of the view of Champion to which one subscribes, it is clear that the exigencies purportedly justifying the patdown search of the defendant in this case did not justify the seizure.[8] Even the lead opinion recognizes the patdown in this case occurred as part of a protective sweep, but that the seizure was justified pursuant to the plain feel doctrine. Thus, we must turn to Dickerson’s requirement that a plain feel seizure be supported by probable cause.
*362 B. THE ABSENCE OF PROBABLE CAUSE
Dickerson made it clear that an object is seizable only where its incriminating identity is immediately apparent because of the mass and contour of the object. As an initial matter, the lead opinion too readily assumes that a limited patdown could clearly reveal the identity of objects in the defendant’s front pocket so that manipulation would not be required to support probable cause for a seizure. Obviously, the contours and mass of the objects in the defendant’s pocket were not unique. This is evidenced by the fact that the officer believed the defendant was carrying cardboard, though he was actually carrying photographs. The lead opinion glosses over the officer’s factual mistake and deems it irrelevant. Though perhaps not dispositive in every case, I believe that a factual mistake about the identity of an object must be “immediately apparent,” because contraband tends to reduce the likelihood that a particular seizure is supported by probable cause. And because the existence of probable cause is made less likely by the mistake, I believe such factual errors are certainly relevant to our determination whether probable cause existed.[9]
*363 Probable cause will be found to exist where the facts and circumstances, within the knowledge of the authorities and of which the authorities had reasonably trustworthy information “were sufficient in themselves to warrant a man of reasonable caution in the belief that [a crime has been committed].” Carroll v United States, 267 US 132, 162; 45 S Ct 280; 69 L Ed 543 (1925). A very important distinction must be drawn between the basis for an officer’s ability to stop and frisk and his ability to seize an item pursuant to the plain feel doctrine. The stop and frisk must be predicated upon only reasonable suspicion. The plain feel doctrine allows an officer to seize immediately apparent contraband that he feels during the patdown on the ground that the officer has probable cause for the seizure. In other words, if an officer feels something that he only reasonably suspects to be contraband, he cannot seize it.
In the present case, I am not convinced that the officer acted upon probable cause, though he may have subjectively suspected that the defendant was carrying blotter acid on cardboard. While the stop and frisk could potentially be justified on reasonable suspicion grounds, that justification would lie largely in the fact that the interest in protecting officers and innocent bystanders from the harm an armed suspect may cause outweighs a suspicious individual’s interest in being free from a limited search. A seizure made pursuant to a frisk requires a higher level of justification than a frisk itself, however, because the officers have gained access to the defendant’s person pursuant to a limited Fourth Amendment exception. When the seizure occurs, the balance to be considered is whether the officer’s ability to seize an item to which he gained access on the basis of reasonable *364 suspicion that an individual was armed and dangerous outweighs an individuars interest in possessing items and the individual’s legitimate expectation of privacy.
Were there no concern for the officer’s safety, an officer could not randomly frisk a defendant. Rather, the search must be limited to a weapons search. Here, we have a defendant who was essentially deemed guilty by association. The officers observed that Holder was intoxicated, found money on Holder, and found drugs on Holder. When they patted down the defendant, they felt no weapons and no contraband. Yet, the lead opinion stretches to the conclusion that the officer had probable cause to believe that the defendant was in possession of blotter acid simply because his friend had been found in possession of marijuana and because he had an object in his pocket that felt like cardboard, which could have been used to blot acid.[10]
Further, Dickerson would support a conclusion that the seizure here was unjustified because the officer conducted a search under the auspices of the plain feel doctrine. Dickerson plainly stated that where a further search is required in order to determine that an object is contraband, it is not seizable under the plain feel doctrine.[11] Here, even if it had been cardboard that the officer felt, he would have had to *365 manipulate the object in order to determine that it was in fact contraband. Cardboard itself is not contraband, and may lawfully be carried. Only a further search would reveal whether the cardboard somehow contained contraband.
In any event, the factors cited in the lead opinion do not support the conclusion that the detaining officer had probable cause to believe that the defendant was carrying drug-laced cardboard in his front pocket. According to the lead opinion:
In this case, while conducting the patdown search of defendant, the officer felt a two-by-three-inch object in defendant’s pocket that he believed was a card of blotter acid. His belief was based on his knowledge that blotter acid was often contained on sheets of cardboard; his awareness that cards of blotter acid were capable of fitting into a pants pocket like that he felt on defendant; the antecedent discovery of marijuana and a large amount of money on Holder, the driver of the vehicle in which defendant was a passenger; Holder’s shout to defendant not to tell the police anything; the fact that defendant was with Holder during the entire evening; and the officer’s training and twenty-three years of experience as a police officer. Under these circumstances, the officer had probable cause to believe that the object he felt in defendant’s pocket was contraband. [Ante at 331-332.]
Interestingly, none of these factors indicates that the officer had reason to suspect that the defendant would be carrying contraband. The officer’s knowledge that blotter acid is often carried on cardboard and that such pieces of cardboard would fit into a pocket do not support a conclusion that this defendant, a person previously unknown to the officers, would be carrying blotter acid in his pants. Additionally, the officer pointed to nothing specific that would distinguish a piece of cardboard used to blot acid *366 from a photograph or any other piece of paper. He had no articulable basis for concluding that whatever piece of paper the defendant was carrying was used for acid blotter.[12] Moreover, the fact that the police knew Holder was carrying marijuana does not support an implication that the defendant would be in possession of acid. In fact, at the point at which he was frisked, the defendant himself had nothing to alert the police that he was engaged in criminal activity. Under the facts and circumstances, a man of reasonable prudence and caution would have no basis for concluding that the defendant had committed the offense of possessing narcotics. Unless it is now an offense to choose one’s associates poorly, I see no reasonable ground for believing that the defendant could be charged with any illegality.[13] Accordingly, I do not believe a finding of probable cause is supportable.
*367 m
Finally, because the lead opinion concludes that the seizure of the photographs in the defendant’s pocket was valid, it reaches the issue whether the photographs were validly examined. I will also address this argument because I believe the argument of the lead opinion is supported neither by logic nor by law.
According to the lead opinion, “the exterior of an item that is validly seized during a patdown search may be examined without a search warrant, even if the officer subsequently learns that the item is not the contraband the officer initially thought that it was before the seizure.” Ante at 337. However, the argument of the lead opinion is premised on the assumption that the police validly possessed the photographs removed from the defendant’s pockets when the search occurred.
If a Fourth Amendment infringement is unsupported by a warrant or other exception to the warrant requirement, the seizure is invalid. In other words, a search or seizure without a warrant is circumscribed by the exigencies justifying it. See, e.g., Horton, supra. Here, the officer removed the photographs from the defendant’s possession and control on belief that they were blotter acid cardboard. The purported justification was plain feel. Yet, once the officer removed the photographs from the defendant’s pocket, it became clear that the object removed was not in fact cardboard. At that moment, the justification supporting the seizure, that the object was imme *368 diately identifiable as contraband, no longer existed.[14] Thus, the scope of the plain feel exception was exceeded and the police no longer had justification for infringing the defendant’s right to possess private photographs.
Additionally, I cannot agree with the conclusion of the lead opinion that the search of the photographs taken from the defendant was supportable. The lead opinion states that the defendant’s expectation of privacy in items he was carrying in his front pocket was “significantly diminished” because an officer removed them during a patdown search under the mistaken belief that they were blotter acid cardboard.[15] Certainly, a defendant has a legitimate expectation of privacy in his front pocket. I would contend that he continued to have a legitimate expectation of privacy after the photographs were removed. Under the view of the lead opinion, an individual’s expectation of privacy in a personal possession would evaporate at the moment an officer removes the item from the individual’s control, even when the officer’s belief is wrong. I cannot agree.[16]
*369 Though the officer’s correctness in his belief that an item is probably contraband might not ultimately invalidate a seizure,[17] a mistake on the officer’s part would most certainly undermine the validity of a subsequent search. Subsequent searches of items seized by police under a Fourth Amendment exception allowing a seizure without a warrant, must necessarily be subjected to a determination whether the individual defendant retains a privacy interest though his possessory interest has been infringed. Surely, society is less likely to recognize an expectation of privacy in illegal materials as being legitimate than in legal materials. The legitimacy concerns associated with contraband simply do not attach to noncontraband items. Thus, if an officer mistakenly seizes a noncontraband item and then searches that item, despite the fact that the item seized is not the contraband he suspected it to be, the officer is necessarily infringing on a privacy interest. Dickerson itself recognized that *370 contraband may be seized during a plain feel or plain view search because the police should not be forced to ignore an apparent illegality. Where the item “felt” is not illegal, the same concerns are not present and the exigency is no longer present.
Moreover, the lead opinion effectively creates an exception to the warrant requirement that permits a search incident to seizure. No such exception exists. Even if I were to agree with the lead opinion that there was a valid basis for seizing the defendant’s photographs, I would not support a rule that eliminates an individual’s expectation of privacy in an item lawfully possessed, but nonetheless seized.
The lead opinion protests that it cannot have created a search incident to seizure exception because it found no search. However, the basis for its conclusion that no search occurred is that a defendant has a “significantly diminished” legitimate expectation of privacy in something seized. The approach of the lead opinion adds weight to my point that its “significantly diminished expectation of privacy” conclusion is distinguishable from a “no legitimate expectation of privacy” conclusion in words only. The lead opinion itself admits that “in order for there to be a ‘search,’ one must have a reasonable expectation of privacy in the object being ‘searched.’ ” Ante at 343. To conclude that no search occurred, then, one must conclude that an individual has no reasonable expectation of privacy in the place to be searched. If an individual has a diminished expectation of privacy, as opposed to no expectation of privacy, then necessarily he must have some expectation of privacy in the place to be searched. If the lead opinion is unwilling to conclude that the defendant had no expectation of privacy, *371 then it cannot also satisfy the test it enunciates as a basis for concluding that no search occurred.
Further, the reason that no “search” occurred in the view of the lead opinion, is that the defendant’s expectation of privacy had been significantly diminished by virtue of the prior seizure. Under this view, the subsequent search by the police was justified by its own prior conduct. Were it not for the seizure, there could have been no subsequent examination because the defendant would have had a reasonable expectation of privacy in his pants pockets. Thus, the lead opinion effectively allows the police to search something seized, and then allows the police to conduct an examination of an object they have seized, by concluding that such an examination would not be a search. Such logic is contrary to search jurisprudence, which focuses on whether a legitimate expectation of privacy has been relinquished.
Also, I find it significant that the lead opinion relies on Champion, supra, to support its conclusion that the officer could seize an item from the defendant, but then ignores Champion’s recognition that
[t]he search of a container preceding a formal arrest can qualify as a search incident to arrest if probable cause for the arrest existed before the container was searched. . . . However, a search of a container cannot be justified as being incident to an arrest if probable cause for the contemporaneous arrest was provided by the fruits of the search, lid. at 116.]
Perhaps the lead opinion would conclude that because no container was opened in this case, the search of the photographs in an attempt to develop probable cause to arrest was permissible. However, as explained above, such a distinction cannot validly *372 be drawn. Here, the defendant was not arrested until after the photographs were removed from his pocket and examined. The probable cause for the defendant’s arrest grew largely from the search of the photographs.[18]
Despite the conclusion of the lead opinion to the contrary, not every item seized by police officers is automatically subject to search without a warrant. In fact, the United States Supreme Court has explicitly held otherwise. In United States v Jacobsen, for example, the United States Supreme Court wrote:
Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such packages are presumptively unreasonable. Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package. [Id. at 114, citing United States v Place, 462 US 696, 700-701; 103 S Ct 2637; *373 77 L Ed 2d 110 (1983); United States v Ross, 456 US 798, 809-812; 102 S Ct 2157; 72 L Ed 2d 572 (1982); Robbins v California, 453 US 420, 426; 101 S Ct 2841; 69 L Ed 2d 744 (1981) (plurality opinion); Arkansas v Sanders, 442 US 753, 762; 99 S Ct 2586; 61 L Ed 2d 235 (1979); United States v Chadwick, 433 US 1, 13, n 8; 97 S Ct 2476; 53 L Ed 2d 538 (1977); United States v Van Leeuwen, 397 US 249; 90 S Ct 1029; 25 L Ed 2d 282 (1970).]
Using Jacobsen as an analogy, the approach of the lead opinion would yield the result that a person’s private package could be opened and searched because the individual expectation of privacy in the item was lost at the time it was seized. The United States Supreme Court reached a contrary conclusion, and so do I.
CONCLUSION
In this case, the officer impermissibly infringed upon both the defendant’s possessory interest and his privacy interest. The photographs were impermissibly seized from the defendant in the first instance, impermissibly retained, and impermissibly searched. Therefore, I would affirm the decisions below and hold that the fruit growing from the seizure of the photographs must be suppressed.
Kelly, J., concurred with Cavanagh, J.

 The question before us has not been directly addressed by our state courts. The closest case to being on point is People v Champion, 452 Mich 92; 549 NW2d 849 (1996). However, Champion did not involve the type of postseizure search that occurred in this case. To the extent that our state constitution is involved, it provides rights coextensive with the federal constitution and need not be addressed independently from our resolution of the Fourth Amendment issues presented. Thus, this case hinges on the applicability of Fourth Amendment jurisprudence and United States Supreme Court precedent.

 The defendant also raises additional Fourth Amendment questions. The lead opinion concludes that we need not address the defendant’s issues. Likewise, this opinion will not address the defendant’s additional issues because I would grant relief to the defendant even without reaching the question.

 This Court has also recognized that a defendant will not be considered individually suspicious simply because he is in a high crime area or in an area where drugs are known to be. Shabaz, supra.

 In fact, the officer testified that part of the purpose of the frisk was to search for weapons on the defendant. The lead opinion finds the officer’s motivation to be irrelevant; however, the law makes it clear that a search exceeding Terry must be based on probable cause. Thus, to the degree that the officer’s knowledge relates to the extent of the search and to his belief that the defendant possessed drugs, it is plainly relevant.

 I believe a similar mistake was made in People v Oliver, 464 Mich 184; 627 NW2d 297 (2001).

 See Champion at 143 (Bkickley, C.J., dissenting) (“The majority justifies its expansive reading of Dickerson by pointing out that it limited its holding to the facts presently before the Court. . . . Yet, it would be naive to conclude that this state’s lower courts would not read the lead opinion in a way that will allow evidence . . . against those whose Fourth Amendment rights have been violated, indeed, opening Pandora’s box.”).

 Importantly, though Champion supported the plain feel seizure of an item that might contain contraband, it did not allow a subsequent search merely because the item had been seized. Rather, it required the additional justification that the search occur incident to arrest. This cuts against the rationale of the lead opinion for searching the photographs seized from the defendant pursuant to the plain feel doctrine.

 There is a fundamental difference between the justification supporting a patdown search for weapons and the justification for seizing something that is clearly not a weapon. In order to determine whether a search or seizure remains within the confines of an exception to the warrant requirement, one must necessarily understand the justification circumscribing the otherwise constitutionally impermissible search or seizure without a warrant. Whereas the potential presence of a weapon may justify an officer’s access to the outer surfaces of a defendant’s clothing during a patdown search, the fact that an officer may lawfully be in a position to search a defendant does not in and of itself justify the officer in seizing anything that he believes is contraband. Rather, a seizure of contraband made during a patdown search requires its own constitutional justification.
In the instant case, if the officer had justification for the seizure, it was because of the plain feel doctrine, not because of the Terry doctrine. Though the plain feel doctrine permits a seizure that would not have had justification but for the officer’s decision to patdown the defendant, the exigencies supporting the search (fear for the safety of the officers or others) clearly would not support a seizure of blotter acid cardboard because blotter acid cardboard does not pose a threat to the officer’s safety.

 Again, I turn to Justice Brickley’s Champion opinion to illustrate why the seizure of noncontraband items is constitutionally problematic. He wrote:
I would hold that Terry specifically forbids the type of seizure conducted in this case and thereby eliminate the incentive to expand patdowns into general searches for contraband. To the extent that Dickerson departs from Terry’s strict prohibitions, it allows admission of nonweapons evidence found during a patdown if, but only if, the officers conducting the patdown have probable cause to believe that the item they feel is contraband. The item felt in this case, the pill bottle, while containing contraband, was not, in and of itself, contraband. Accordingly, it was impossible for Officer Todd to have probable cause to believe otherwise. His seizure of it, therefore, was illegal. [Id. at 143.]

 Under the view of the lead opinion, almost any object felt during a patdown could be seized. Could a pen be mistaken as a syringe? A marble as cocaine? A cigarette as marijuana? A letter as blotter paper?

 I, therefore, disagree with the lead opinion that Champion in no way extended Dickerson. Obviously, an ordinary pill bottle is not illegal to possess. Thus, before the officer in Champion could determine a pill bottle could be classified as contraband, he had to determine somehow that it was in fact used for an illegal purpose. Thus, the very type of additional search prohibited by Dickerson occurred in Champion.

 In fact, the officer’s testimony that blotter acid paper is generally paper that can be divided easily into small sections and have acid dropped on it so that it may be sucked off by a recipient tends to imply that a photograph that is thicker and slipperier than paper would not have the characteristics of normal acid blotter.

 Interestingly, the lead opinion’s probable cause rationale is barely distinguishable from its reasonable suspicion rationale. The only factor that separates the reasonable suspicion supporting a patdown search and the probable cause required for a seizure are that the officer knew cards of blotter acid could fit in a pocket. As emphasized herein, the officer had no articulable reason to believe that the defendant possessed blotter acid paper or other drugs.
Contrary to the implication of the lead opinion, I do not suggest that the same factors that would support a finding of reasonable suspicion cannot factor into the probable cause analysis. Rather, I believe it is important to recognize that the minimal factors justifying a patdown weapons search do not rise to the level of probable cause. Also the officer’s additional indication that a piece of cardboard could fit in someone’s front pocket, and his knowledge that some people blot acid on cardboard, hardly move the degree of suspicion possessed in this case into the category of probable cause.

 In criticizing my approach, the lead opinion conveniently omits this sentence. Such omission illustrates the lead opinion’s lack of appreciation of one of the most important aspects of this case—that a search or seizure without a warrant is circumscribed by the warrant exception justifying it.

 Ironically, the lead opinion cites Arizona v Hicks, in support of its position. In Hicks, the United States Supreme Court held that the plain view doctrine would not support a seizure where the officers exceeded the scope of the exigency allowing them to be in a place to see what was suspected to be contraband, and also where the police had to move an item in order to determine whether it was in fact contraband.

 The lead opinion takes pains to try to explain why rights are only “diminished” under its approach. While it admittedly uses the phrase “significantly diminished” throughout its opinion, I am not persuaded that the label accurately fits the approach. When would a legitimate expectation of privacy preclude a further search under the rationale of the lead opinion?
*369 The lead opinion seems to argue that the result might be different were the officer required to open a container and look inside. Yet, how can this be true considering that it places primary reliance on Champion, a case in which the officer did just that? Further, the law does not support a conclusion that an officer somehow has justification to manipulate an object and search parts of its exterior that are not in the officer’s view. Our Supreme Court has said that plain view seizures are not justified where the officer moves an object even minimally in order to determine whether the object is illegally possessed. Hicks, supra. Similarly, an object that must be manipulated in order to determine whether it is contraband is not subject to seizure under the plain feel doctrine. Dickerson, supra. The same rationale applies in the context of the present case. I see no meaningful or outcome-determinative distinction between a situation where an officer has to manipulate an object’s exterior in order to determine whether the object contains contraband and a situation in which the officer must open the object and look inside to determine whether it contains contraband. In either situation, the officer is conducting a search of an object in order to convert his suspicion that an object contains contraband into confirmation that it does.

 It would, however, be relevant to a determination whether probable cause existed.

 There was some discussion at trial about when the defendant was actually placed under arrest. The trial transcript indicates that the defendant was not formally arrested at the time he was transported to the police station for questioning after the police examined the photos seized from his front pocket; however, the detaining officer also testified that the defendant was not free to leave after the photographs were seized. What is clear, though, is that this “arrest” of the defendant is not the same arrest upon which the charges of delivery and manufacture, maintaining a drug house, and conspiring to deliver or manufacture were, predicated. Those charges were brought on the basis of evidence seized during a search of the defendant’s home that occurred after officers decided to investigate the defendant because of what they had seen when examining the photographs.
Following the chain of events backward reveals the number of steps that were taken in order to develop probable cause for the defendant’s ultimate arrest for the drug offenses that form the basis of the instant appeal: the arrest grew from the seizure of drugs, which grew from the search of the defendant’s house, which grew from the search of the photographs, which grew from the seizure of the photographs, which grew from the patdown search of the defendant, which grew from reasonable suspicion that he was armed, which was inferred from the conduct of Holder.